MURELLO CONSTRUCTION CO., APPELLANT, *v.* CITIZENS HOME SAVINGS CO., APPELLEE.

(No. 3894 — Decided December 26, 1985.)

---

*Henry DuLaurence,* for appellant.
*Anthony Giardini,* for appellee.

GEORGE, P.J. This matter was filed to enjoin the filing of a foreclosure action on four properties, for damages resulting from the decrease in value of those properties, for a declaration of the rights and liabilities of the parties under certain notes, and for attorney fees and other equitable relief. Citizens Home Savings Co., defendant-appellee, made four commercial real estate loans to Murello Construction Co., plaintiff-appellant, each being secured by a mortgage and note. Citizens gave Murello notice that it intended to increase the rate of interest being charged on each note, which notice precipitated the filing of this action. Murello claimed that Citizens could not increase the rate of interest and that an injunction should issue against Citizens to prohibit it from foreclosing upon Murello's properties should Murello fail to pay the increases.

The trial court granted summary judgment to Citizens against Murello under Civ. R. 56(B). The court found that the notes were "clear, unambiguous and specific in granting" to Citizens "the power to vary the interest rate after giving [Murello] due notice." Murello appealed. This court held that there was insufficient evidence contained in those matters then before the trial court to support the granting of summary judgment. *Murello Constr. Co.* v. *Citizens Home Savings Co.* (Nov. 21, 1984), Lorain App. No. 3663, unreported. The judgment was then vacated and the matter was remanded. Upon remand, the trial court did take evidence. It determined that the notes provided for an adjustable rate of interest and again granted judgment to Citizens.

## Assignment of Error I

"The trial court erred in denying plaintiff-appellant its demand for a trial by jury."

The trial court denied Murello's demand for a jury trial because the complaint sought primarily equitable relief. Although not clearly drawn, the thrust of the complaint sounded in declaratory judgment and injunctive relief. The plaintiff requested a determination of whether the notes permitted Citizens to increase the interest rate upon giving the required notice to Murello, and also to enjoin the increase in interest.

Civ. R. 38(B) provides:

"Any party may demand a trial by jury on any issue triable of right by a jury * * *."

Civ. R. 39(A) provides:

"When trial by jury has been demanded * * * trial * * * shall be by jury, unless * * * (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist.* * *"

The money demand, while specific, was incidental and ancillary to the equitable relief sought and would ripen only if the equitable relief were granted. *Pyromatics, Inc.* v. *Petruziello* (1983), 7 Ohio App. 3d 131, 7 OBR 165, 454 N.E. 2d 588. Thus, the equitable relief was the primary action. Under the facts of this case, the money demand did not convert the action into one for money only with the right to trial by jury. *Huntington Natl. Bank* v. *Heritage Investment Group* (1983), 12 Ohio App. 3d 113, 12 OBR 420, 467 N.E. 2d 564.

A further indication of the nature of the action was a recitation of a specific amount claimed to be due resulting from damages, but the lack of any prayer for a money judgment. Murello concedes that where one cause of action is incidental or dependent on or connected with the other, that one cause may be paramount, so as to stamp the entire action with its characteristics. *Pyromatics, Inc.* v. *Petruziello, supra.* Further, Murello agrees that the right to a jury trial is dependent upon whether the legal cause of action is predominant. Here the trial court found that the legal cause of action was incidental to the equitable relief sought and this court agrees.

This assignment of error is overruled.

### Assignment of Error II

"The trial court erred in finding that the phrase 'above rate of interest' in a mortgage note refers to the contract rate of interest, which rate is set out in a separate paragraph, rather than the default rate of interest, which rate is set out in the same paragraph and preceeding the phrase in question."

Each of the four notes executed by Murello contained identical provisions, set forth below, with variations only as to the principal and the contract rate of interest:

"For value received, the undersigned promise to pay to the order of THE CITIZENS HOME SAVINGS ASSOCIATION CO., at its office in Lorain, Ohio, or at such other place as may be designated by the holder of this note, the principal sum of TWO HUNDRED TWENTY-FOUR THOUSAND AND NO/100 DOLLARS ($224,000.00) and such additional sums as may be advanced hereon by the holder of this note, together with interest at the rate of 7¾% per centum per annum. When additional sums are advanced, the holder of this note may (1) reschedule monthly payments to amortize the new balance within the stated maturity of this note, (2) extend the maturity of the note and retain the present schedule of monthly payments, (3) fix a separate rate of interest to be paid by the obligor on the advance, which may be its prevailing rate, or (4) reset the rate of interest on the principal balance of this note, including advances.

"Principal and interest shall be payable in advance in monthly installments of ONE THOUSAND EIGHT HUNDRED THIRTY-EIGHT AND 93/100 DOLLARS ($1,838.93) per

month beginning on the first day of September 1969. In the event of failure to make monthly payments as scheduled, interest shall be computed and charged each month at the rate of eight per centum (8%) per annum, and added each month to the principal balance of this obligation. The above rate of interest may, at the option of the holder, be decreased at any time, or may be increased from time to time by giving not less than sixty (60) days notice of such increase, in writing, to the undersigned, at his last known address."

The trial court specifically found:

"(4) The above quoted provisions of the mortgage notes grant to the holder of the note the option to decrease at any time and to increase upon not less than sixty (60) days notice the 'above rate of interest'.

"(5) There are two rates of interest which precede the option clause. The first rate of interest referred to in the mortgage note is the initial contract rate of interest (which is different for each loan). The contract rate of interest is set forth in the paragraph which contains the option clause. The second interest rate found in the notes is the default rate of interest. The default rate of interest is stated to be 8% and is the same in each note and is a part of the printed form. The default rate of interest is in the same paragraph as the option clause.

"* * *

"(16) The interest rate referred to in the option clause is the contract rate of interest not the default rate of interest."

The trial court concluded that the notes were enforceable, valid and binding and that the particular clause was valid and enforceable. The court further stated:

"* * * There is no lack of mutuality or good faith, no waiver, no laches and no unconstitutionality. The option herein is clearly applicable to the contract rate of interest and not the default rate.

To hold otherwise would require an illogical interpretation of the agreement between a lending institution and a professional, astute, businessman. Business agreements must be construed with business sense, as they naturally would be understood by intelligent businessmen. One who has the business acumen of the plaintiff and voluntarily signs a negotiable instrument cannot now claim ignorance or mistake as a defense. 40 [Ohio Jurisprudence 2d (1967), Negotiable Instruments and Other Commercial Paper, Section] 485; *Leddy* v. *Ellsworth Construction Co.* (1966), 9 Ohio App. 2d 1."

Unlike the status of this case before remand, the trial court had the benefit of evidence. The president and general counsel for Citizens testified as to the business practices of Citizens. Evidence was presented that in the 1960s lending institutions experienced strong competition so that flexible terms were necessary to attract new borrowers and to maintain existing ones. The president testified that the option clause had meaning only when applicable to the contract rate of interest.

It is within the trial court's discretion to believe or disbelieve a particular witness and to give such weight to each witness's testimony as the court deems proper. There was sufficient competent evidence upon which the trier of fact could conclude, as the court did here, that the option clause was applicable to the contract rate of interest. This court will not substitute its judgment for that of the trier of fact. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus.

Murello also contends that the variable interest rate clauses render the instruments non-negotiable because one cannot tell from the face of the instruments whether they are for a "sum certain" in money. R.C. 1303.05, Official Comment 1. This argument is without

merit. The negotiability of the notes was not an issue before the trial court, nor is it one in this appeal. The clause may render the instruments non-negotiable. However, here the concern goes to the enforceability of the notes as between the immediate parties and not negotiability. This appeal does not concern a dispute between the maker and a subsequent purchaser of the commercial paper. The negotiability of the instruments would only be important if they had been transferred to some third party, and then only in respect to what defenses could be raised against the transferee. Accordingly, the second assignment of error is overruled.

### Assignment of Error III

"The trial court erred in holding that an escalator clause in a mortgage note is definite and certain, and so enforceable, even though the clause has no standard by which performance can be ascertained."

In respect to the enforceability of the contractual liabilities of the parties, the trial court specifically found that:

"The contract forms herein are definite and certain and the lack of limits to the clause in question does not vitiate the contract. Re-financing is available to a business person who objects to interest rates which are variable and unacceptable. The note and the option clause to increase or decrease the contract rate of interest are not unconscionable, are not against the public interest, and are therefore valid."

Murello argues that the variable interest rate clause is not tied to any ascertainable reference. Therefore, it is indefinite and uncertain rendering the clause unenforceable. Murello cites *Preston* v. *First Bank of Marietta* (1983), 16 Ohio App. 3d 4, 16 OBR 4, 473 N.E. 2d 1210, for this proposition. *Pres-*

*ton* is distinguishable on its own facts and hence is not applicable to the instant case. In *Preston,* the court was faced with the interpretation of Regulation Z of the Federal Truth-In-Lending Act, Section 1601 *et seq.,* Title 15, U.S. Code. The regulation calls for special disclosure requirements with respect to variable rate interest clauses. *Preston* also dealt with a residential mortgage agreement executed by unsophisticated consumers, not a commercial loan negotiated between astute businessmen and their attorneys.

Although the court in *Preston* stated in *dicta* that refinancing did not provide a reasonable option to the maker because of the attendant costs and time, that court was primarily concerned with the plight of the consumers-lenders before it. In the instant case, the commercial loans in question totaled almost a million dollars. Refinancing is certainly a more economically viable option for Murello than it would be for the ordinary residential mortgagor.

This court finds that it must differ with the *Preston* majority's *dicta* concerning the need for an ascertainable standard for which to compute the escalated rate of interest, at least with respect to commercial loans. Variable rate loans provide an acceptable way for lending institutions to deal with the unexpectable increases and decreases in the money market. The sixty-day notice requirement contained in the notes protects the maker against arbitrary increases of the interest rate by allowing them sufficient time in which to refinance the loan. Accordingly, assignment of error three is overruled and the judgment of the trial court affirmed.

*Judgment affirmed.*

MAHONEY and QUILLIN, JJ., concur.