**SCHWARTZ, Exr., Appellant,**

v.

**BANK ONE, PORTSMOUTH, N.A., Appellee.**

[Cite as *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806.]

Court of Appeals of Ohio,
Scioto County.

No. 92 CA 2042.

Decided Dec. 31, 1992.

*Mark W. Price,*[1] for appellant.

*Stanley C. Bender,* for appellee.

---

PETER B. ABELE, Judge.

This is an appeal from a summary judgment entered by the Scioto County Common Pleas Court in favor of Bank One, Portsmouth, N.A., defendant below and appellee herein.

Appellant Reaca Schwartz assigns the following error:

"The Trial Court Should Not Have Sustained The Defendant's Motion For Summary Judgment."

On December 4, 1968, Pauline Schwartz, Eugene Schwartz, and David Schwartz executed a promissory note in the principal amount of $18,500 in favor of Security Central National Bank (now Bank One, Portsmouth, N.A.). The Schwartzes pledged two hundred fifty-two shares of common stock in General Motors Corporation as collateral for the note.

Pauline and David Schwartz died in 1976 and 1977, respectively. The Adams County Court of Common Pleas, Probate Division, appointed Reaca Schwartz, plaintiff below and appellant herein, executor of the estates. Appellant paid $5,605.61 on the principal and $8,978.14 in interest to Bank One's predecessor, Security Central National Bank.

---

1. Different counsel represented appellant in the proceedings below.

In March 1982, the loan was in default and the president of Bank One notified appellant that if the balance due on the note ($7,894.39) was not paid, the General Motors stock would be sold. Appellant failed to pay the balance due and on April 1, 1982, appellee sold the stock. Appellee deducted from the sale proceeds the outstanding principal, expenses of $221.93, and interest of $1,423.33. Appellee remitted the balance to appellant.

On September 28, 1989, appellant filed a complaint alleging appellee had made unauthorized changes in the interest rate throughout the life of the loan. Appellant contends appellee had overcharged on the note in the amount of $6,451.46. Paragraph ten of the complaint provides as follows:

"The defendant intentionally, willfully and fraudulently made unauthorized changes in the interest rate on the demand note the consequence of which was the sale of stock."

On January 22, 1991, appellee filed a motion for summary judgment based on the expiration of the statute of limitations. Appellee maintained the complaint is based on fraud and the R.C. 2305.09 four-year statute of limitations applies. On February 10, 1992, the trial court issued a decision and judgment entry granting appellee's motion for summary judgment and dismissing appellant's complaint.

Appellant filed a timely notice of appeal.

I

In her sole assignment of error, appellant asserts the trial court erred by granting appellee's motion for summary judgment. Appellant contends this action involves a breach of a written loan agreement and the statute of limitations for a written contract must govern. See R.C. 2305.06.[2]

Appellee argues the complaint sounds in fraud, not breach of contract, and that appellant filed her complaint after the expiration of the applicable statute of limitations. See R.C. 2305.09.[3] In support of its argument, appellee contends:

---

2. R.C. 2305.06 provides:
   "Except as provided in section 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."

3. R.C. 2305.09 provides:
   "An action for any of the following causes shall be brought within four years after the cause thereof accrued:
   "* * *
   "(B) For recovery of personal property, or for taking or detaining it;
   "(C) For relief on the ground of fraud;
   "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 and 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code.

(1) paragraph 10 of appellant's complaint provides that appellee acted "intentionally, willfully and fraudulently"; (2) the prayer for relief in appellant's complaint sought recovery " * * * as a direct and proximate result of the willful and fraudulent acts of the defendant * * * "; (3) appellant failed to attach a copy of the written contract to the complaint in accordance with Civ.R. 10(D) [4]; and (4) appellant sought to recover punitive damages.

■ Summary judgment is appropriate when the movant demonstrates: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

■ When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary judgment cases. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

---

"If the action is for * * * the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."

4. Civ.R. 10(D) provides:

"(D) Copy Must Be Attached. When any claim or defense is founded on an account or other written instrument, a copy thereof must be attached to the pleading. If not so attached, the reason for the omission must be stated in the pleading."

In *Point Rental Co. v. Posani* (1976), 52 Ohio App.2d 183, 186, 6 O.O.3d 171, 173, 368 N.E.2d 1267, 1269, the court wrote:

"The proper procedure in attacking the failure of a plaintiff to attach a copy of a written instrument or to state a valid reason for his failure to attach same is to serve a motion for a definite statement, pursuant to Civ.R. 12(E). Had that motion been granted, as would have proper in this case, plaintiff could properly have been required to amend his complaint within 14 days after notice of the order sustaining the motion for a definite statement, and ordered to attach a copy of the written instrument or state a valid reason for the failure to attach same."

In *Phillips v. Fishel* (Jan. 28, 1983), Lake App. No. 9–041, unreported, 1983 WL 6273, the court was faced with a situation similar to the case at bar. The *Phillips* court stated: "In the instant case, appellant filed his answer without previously filing a Civ.R. 12(E) motion. Appellant is, therefore, now precluded from raising this issue." *Id.* at 4. See, also, *Bomanite Designs, Inc. v. LeBail* (Oct. 26, 1990), Lake App. No. 89–L–14–139, unreported, 1990 WL 162583.

In the case *sub judice*, appellee did not file a Civ.R. 12(E) motion before filing its answer.

The sole issue presented in this appeal is whether the instant action sounds in tort or in contract. In *Meeker v. Shafranek* (1960), 112 Ohio App. 320, 323, 16 O.O.2d 32, 34, 176 N.E.2d 293, 295, the court wrote:

"In many cases the dividing lines between actions in contract and actions in tort are extremely uncertain. Courts, however, must look to the nature of the grievance rather than the form of the pleading. If a petition states a cause of action in contract, the nature of the action is not changed by the mere fact that there is also contained therein a charge of tortious conduct."

Thus, a cause of action cannot be classified a tort action simply because the appellant used the term "fraudulently" in her pleading. Moreover, the Ohio Supreme Court has held that the addition of the adverbs "intentionally" and "willfully" do not change the nature of the cause of action; they only tend to emphasize that the action was done "in utter disregard of the rights of the defendants in error and with an evil and wicked purpose." *Ketcham v. Miller* (1922), 104 Ohio St. 372, 377, 136 N.E. 145, 150. See, also, *Tibbs v. Natl. Homes Constr. Corp.* (1977), 52 Ohio App.2d 281, 290, 6 O.O.3d 300, 305, 369 N.E.2d 1218, 1224–1225; *Schaeper v. Johnson* (May 20, 1987), Hamilton App. Nos. C–860397 and C–860416, unreported, 1987 WL 10933; *G & S Metal Prod. Co. v. Rosenblum* (June 21, 1979), Cuyahoga App. No. 39116, unreported; *Mid–State Homes, Inc. v. Kirk* (Oct. 22, 1985), Morrow App. No. CA–638, unreported, 1985 WL 7288.

In the case *sub judice*, once we remove the three adverbs, "intentionally, willfully and fraudulently," from the allegation, we are left with the charge that "[t]he defendant * * * made unauthorized changes in the interest rate on the demand note the consequence of which was the sale of stock." In order to apply the proper statute of limitations, we must determine if this wording sounds in tort or in contract.

Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract. *Ketcham, supra; Tibbs, supra.* In *Ketcham,* the Supreme Court held that an action for forcible dispossession of tenants in breach of the lease is an action in contract. Similarly in *Tibbs,* the court held the duty to build a house according to a contract grows out of the bargain. There is no duty imposed by law to build a house without defects and in a workmanlike manner. *Tibbs,* 52 Ohio App.2d at 292–293, 6 O.O.3d at 306, 369 N.E.2d at 1226.[5]

---

5. This must be contrasted with *Velotta, infra,* where the Supreme Court held that there is a duty imposed by law to *sell* an already constructed, new house without defects:

"We express no opinion as to whether a different result would be reached were the contract herein one to build a residence in the future or one to complete a partially constructed residence. See, *e.g., Lloyd v. William Fannin Bldrs.* (1973), 40 Ohio App.2d 507 [69 O.O.2d 444], 320 N.E.2d 738, where the parties had entered into a contract for the sale of a residence

■ Generally, the setting of interest rates and the duty to notify the debtor of changes in interest rates are governed solely by the written contract. There is no duty concerning interest rates imposed by law, either common-law or statutory law. See *Murello Constr. Co. v. Citizens Home Savings Co.* (1985), 29 Ohio App.3d 333, 29 OBR 461, 505 N.E.2d 637 (variable interest rate clause is an enforceable contract term); *Hobart Bros. Co. v. Welding Supply Serv., Inc.* (1985), 21 Ohio App.3d 142, 21 OBR 152, 486 N.E.2d 1229 (to charge other than the statutory interest rate, the interest rate must be clearly set out in a written contract); *Peterson v. Ravenna S. & L. Co.* (Nov. 8, 1991), Portage App. No. 91–P–2297, unreported, 1991 WL 233733 (unless provided in the written loan agreement, a lender has no duty to disclose a change in interest rates); *First Fed. S. & L. Assn. of Akron v. Cheton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298 (contract required notice of changes in interest rate, but not of the borrower's cost of money; therefore, the lender was under no duty to report changes in the cost of money).

■ By contrast, where the duty allegedly breached by the defendant is one that is imposed by law, whether or not it arises out of a contract, the cause of action is not based on contract, but rather on tort. *Velotta v. Leo Petronzio Landscaping, Inc., supra,* paragraph one of the syllabus. In *Velotta,* the court considered whether the tort or contract statute of limitations applied to an action by a vendee against the builder-vendor of a completed residence for failure to construct in a workmanlike manner. The court held that "[a]n action by a vendee against the builder-vendor of a *completed residence* for damages proximately caused by failure to construct in a workmanlike manner using ordinary care—*a duty imposed by law*—is an action in tort to which the four-year statute of limitations set forth in R.C. 2305.09(D) applies." (Emphasis *sic.*) *Velotta,* paragraph one of the syllabus.

Similarly, courts have held that an insurance company has a duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer. *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 694, 590 N.E.2d 1228, 1232; *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus. See, also, *United Dept. Stores Co. No. 1 v. Continental Cas. Co.* (1987), 41 Ohio App.3d 72, 534 N.E.2d 878; *Plant v. Illinois Employers Ins. of Wausau* (1984), 20 Ohio App.3d 236, 20 OBR 297, 485 N.E.2d 773.

---

to be constructed by the builder-vendor, and the court held the obligation to construct in a workmanlike manner arises *ex contractu.*" *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 378, 23 O.O.3d 346, 347, 433 N.E.2d 147, 150, fn. 2.

Applying the above cases to the instant case, we must determine if "mak[ing] unauthorized changes in the interest rate on the demand note" is an allegation of a breach of a duty imposed by law independent of the contract. As the above cases indicate, duties of lenders pertaining to interest rates arise solely out of the written contract, and are not imposed by law independent of the contract. We find, therefore, appellant's allegation as to unauthorized changes in interest rates arises out of the written loan agreement between the parties and that R.C. 2305.06 sets forth the applicable statute of limitations. Thus, appellant timely filed her action and we hereby reverse the trial court's judgment granting appellee's motion for summary judgment.

Accordingly, based upon the foregoing reasons, we sustain appellant's assignment of error.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, P.J., and GREY, J., concur.