DECISION AND JUDGMENT ENTRY
Gasel Transportation Lines, Inc. ("Gasel") appeals the decision of the Washington County Court of Common Pleas, which granted summary judgment to General Security Insurance Co. ("General Security") and R.L. Weaver Co. ("Weaver"). Gasel argues that the trial court erred in granting summary judgment because genuine issues of material fact remain. We agree because there are genuine issues of material fact about whether the written agreement embodies the meeting of the parties' minds and about the intent of the parties regarding withdrawals from Gasel's letter of credit and the reasonableness of the withdrawal by General Security. Accordingly, we reverse the decision of the trial court.
 I.
Gasel is a commercial trucking business. Prior to 1998, Gasel obtained liability insurance through his insurance broker, Wellington F. Roemer Insurance, Inc. ("Roemer"). Roemer had previously terminated other insurance policies before the policy expiration in order to obtain policies with better terms for Gasel. Roemer negotiated a policy with General Security for the period of May 1, 1998 to May 2, 1999. The insurance binder estimated the annual premium at one hundred forty-four thousand dollars.
Pursuant to the negotiated terms, Gasel established a twenty-eight thousand dollar letter of credit as collateral. R.L. Weaver Co. ("Weaver") executed the written agreement as program manager for General Security.
Thereafter, Gasel paid all amounts due to General Security. At the end of September 1998, Gasel notified General Security, via a written notice to Roemer, that it intended to cancel the policy effective October 1, 1998.
On February 4, 1999, Roemer invoiced Gasel for a ten thousand twenty-five dollar premium based upon the early termination of the policy, i.e., a short-rate premium.[1]
Gasel, claiming it had never agreed to such a premium, refused to pay the short-rate premium. On February 17, 1999, General Security drew ten thousand twenty-five dollars from the letter of credit.
In June 1999, Gasel, through the bank, notified General Security of its intent to cancel the letter of credit in thirty days. Approximately two weeks later, General Security withdrew an additional five thousand dollars from the letter of credit.
In December 1999, Gasel filed a complaint seeking, among others things, the return of the short-rate premium and the five thousand dollars withdrawn from the letter of credit.
The case was transferred to federal court pursuant to Section 1441(b), Title 28, U.S.Code. The federal court remanded the case to the trial court because all parties agreed that the amount in controversy was less than seventy-five thousand dollars, negating federal diversity jurisdiction. Section 1332, Title 28, U.S. Code.
General Security and Weaver filed for summary judgment arguing that they acted lawfully and within the boundaries of the insurance policy and the letter of credit agreement. They attached Richard Weaver's affidavit to their motion. Mr. Weaver is the president of Weaver. He swore that the insurance policy included a provision for a short-rate premium and that the short-rate calculation used in the case is the industry standard. He also swore that General Security was entitled to withdraw the ten thousand twenty-five dollar and five thousand dollar amounts because Gasel refused to pay the premiums and notified General Security of its intentions to cancel the letter even though the outstanding liability of Gasel to General Security was unknown (but at least thirteen hundred eighty dollars).
General Security and Weaver attached copies of the insurance policy and letter of credit agreement to their motion. The insurance policy stated, "If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata." The letter of credit stated:
 II. INSURED will, not less than thirty (30) days prior to the termination or expiration of the LETTER OF CREDIT, deliver to COMPANY, a replacement irrevocable letter of credit or other replacement collateral in an amount and form acceptable to COMPANY, which will become effective immediately upon the termination or expiration of the LETTER OF CREDIT. INSURED will continue to provide COMPANY with irrevocable letter of credit or other collateral in an amount and form acceptable to COMPANY as security for the payment of INSURED'S OBLIGATIONS until COMPANY determines that there is no longer any need for such security. INSURED recognizes that COMPANY may continue to require collateral as security for the payment of INSURED'S OBLIGATIONS after any cancellation, non-renewal or replacement of the POLICY.
 III. COMPANY has the right to draw against the LETTER OF CREDIT in each instance where the INSURED'S OBLIGATIONS for any reason * * * are not fulfilled, or in the event of the inability or unwillingness of INSURED to provide COMPANY with a replacement letter of credit or other collateral acceptable to COMPANY as required by this Agreement.
In response, Gasel filed the affidavit of its president, Michael J. Post. Post swore that during negotiations for the policy no mention was made about a short-rate premium. He also stated that none of the documents he viewed before the actual policy included anything about a short-rate premium. Post swore that he did not receive the insurance policy until months after the effective date. Post swore that he had no knowledge of an industry standard of charging a short-rate premium for an early cancellation and disputes Weaver's assertion that it is an industry standard. With respect to the five thousand dollar draw on the letter of credit, Post swore that he knew of no amount Gasel owed to General Security and Weaver and that General Security first explained the withdrawal in its motion for summary judgment.
Post attached a copy of the insurance binder to his affidavit. The binder provides in part:
 The information contained in this document is provided in summary form for your convenience. Only the Insurance Contract itself is legally binding. Please refer to the policy for specific information such as policy limits, extent of coverage, exclusions and deductible levels.
The trial court granted the summary judgment motion. The trial court noted that in the absence of legislation, the rights of the parties upon cancellation of an insurance policy are fixed by the contract as set forth in the policy. Gibbons v. Kelly (1951), 156 Ohio St. 163, paragraph two of the syllabus. The trial court found that the policy provides for the terms and conditions that govern computation of the premiums and the amount of money due upon cancellation, and allows a short-rate premium. The trial court also found that the letter of credit permitted the five thousand dollar withdrawal.
Gasel appeals and asserts the following assignment of error:
The trial court erred in finding there to be no genuine issue of material fact and dismissing plaintiff's complaint by summary judgment.
 II.
Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed in his or her favor. Civ.R. 56. See Bosticv. Connor (1988), 37 Ohio St.3d 144, 146; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Morehead v. Conley (1991),75 Ohio App.3d 409, 411. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Morehead v. Conley, 75 Ohio App.3d at 411-12. See, also,Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988)38 Ohio St.3d 112, 115. The moving party bears this burden even for issues that the nonmoving party may have the burden of proof at trial.Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in [the nonmovant's] pleadings. * * * [The movant] must present evidentiary materials showing that a material issue of fact does exist." Morehead v. Conley, 75 Ohio App.3d at 413.
We presume that the language of a contract between competent persons accurately reflects their intentions. Fairway Manor, Inc. v. Bd. ofCommrs. of Summit Cty. (1988), 36 Ohio St.3d 85; Kelly v. Medical LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. Latina v.Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214; Alexander v.Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning.Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638.
To constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on one side and an acceptance on the other side. Noroski v. Fallet (1982), 2 Ohio St.3d 77. In the absence of fraud or mutual mistake, a party who executes a written contract cannot say that he or she was ignorant of its contents and thus escape liability. McAdams v. McAdams (1909), 80 Ohio St. 232. A signature on a contract is evidence that the minds of the parties met on the terms of the contract as executed; however, this evidence, or the inference drawn from the execution of the contract, can be rebutted. Parklawn Manor,Inc. v. Jennings-Lawrence Co. (1962), 110 Ohio App. 151.
Here, it seems that the parties verbally negotiated an insurance policy. Post swore in his affidavit that during the negotiations, the parties negotiated many issues, but never mentioned a short-rate premium. Post also swore that the binder made no mention of the short-rate premium and that he entered the contract without agreeing to a short-rate premium adjustment upon early cancellation of the policy. General Insurance and Weaver's Civ.R. 56 materials simply state that the parties entered into an insurance policy. Post also swore that he did not receive the insurance policy "until months after the effective date, near or after the date of [cancellation.]" A signed copy of the insurance policy is not in the record.[2] Thus, viewing the Civ.R. 56 materials in the light most favorable to the nonmovant, there is a genuine issue of material fact about whether the written agreement embodies the meeting of the parties' minds.
Because a genuine issue of material fact exists as to the terms of the contract, we decline to address Gasel's arguments concerning the short-rate premium as they concern interpretation of the contract. However, we address Gasel's argument concerning the agreement for the letter of credit because this agreement's terms are not in dispute.
In his final argument, Gasel argues that the trial court erred in granting summary judgment on the issue of the five thousand dollar withdrawal from the letter of credit because there is a genuine issue of material fact as to its reasonableness.
We presume that the language of a contract between competent persons accurately reflects their intentions. Kelly, 31 Ohio St.3d at paragraph one of the syllabus. When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. Latina, 57 Ohio St.3d at 214; Alexander, 53 Ohio St.2d at paragraph one of the syllabus. "However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. Thus, where a contract is missing an essential term, such as the duration of an obligation, parol evidence is admissible so that the court may construe an ambiguous or missing term. Id. at 324.
The contract at issue clearly provides that Gasel must "continue to provide [General Security] with irrevocable letter of credit or other collateral in an amount and form acceptable to [General Security] as security for the payment of [Gasel's obligations] until [General Security] determines that there is no longer any need for such security." In this contract, Gasel "recognize[d] that [General Security could] continue to require collateral as security for the payment of [Gasel's obligations] after any cancellation, non-renewal or replacement of the [policy]."
Viewing the facts in the light most favorable to Gasel, once Gasel notified General Security that it was canceling the letter of credit and would not be supplying another, General Security was entitled to require collateral and therefore entitled to draw upon the letter of credit for that collateral. However, the contract is silent as to the amount of security needed and the duration General Security could keep the collateral. Thus, the amount and duration cannot be determined from the four corners of the contract, and a "factual determination of intent or reasonableness may be necessary to supply the missing term." InlandRefuse, 15 Ohio St.3d 322. Viewing the evidence in the light most favorable to Gasel, reasonable minds can come to differing conclusions as to the intent of the parties regarding these terms and the reasonableness of General Security's actions. Accordingly, the trial court erred in granting summary judgment on this issue.
Because we have found that the trial court erred in granting summary judgment, we sustain Gasel's only assignment of error. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________ Roger L. Kline, Judge
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
[1] A short-rate premium is a "charge, proportionally higher than the annual rate, made for insurance issued or continued in force by the insurer for less than one year." Webster's New Universal Unabridged Dictionary (1996) 1170.
[2] Because we do not have the entire insurance policy in the record, we cannot determine whether the policy contained an integration clause. Therefore, we expressly decline to decide whether, upon remand, the trial court may consider parol evidence. See, generally, Trinova Corp. v.Pilkington Bros. P.L.C. (1994), 70 Ohio St.3d 271, 276-77 (if the parties intended their writing to be a final complete expression of their agreement, the agreement is deemed to be integrated, and the parol evidence rule generally bars evidence of prior negotiations); Gem SavingsAss. v. Sterling Gold Properties, (Oct. 2, 1992), Montgomery App. No. 12719, unreported.