DECISION AND JUDGMENT ENTRY
Teena E. Fisher appeals the decision of the Jackson County Common Pleas Court, Probate Division, which entered summary judgment against her. The trial court held that Fisher could not succeed in the will contest she filed with regard to the will that her late husband, William E. Fisher, III ("the decedent"), executed on March 19, 1999. Ms. Fisher asserts that genuine issues of material fact exist as to whether the decedent possessed the capacity to make a valid will on that date. Because the record contains uncontroverted evidence that the decedent possessed the necessary testamentary capacity at the time he executed the will, we disagree. Ms. Fisher also asserts that genuine issues of material fact exist as to whether the decedent executed the March 19, 1999 will under undue influence. Because Ms. Fisher offered no evidence that the decedent's will did not express his intentions or that the decedent was susceptible to undue influence, we disagree. Accordingly, we overrule Ms. Fisher's assignment of error and affirm the judgment of the trial court.
 I.
Ms. Fisher and the decedent married on October 2, 1992. On August 4, 1995, the decedent executed a will appointing Ms. Fisher executor and leaving half of his property to her and the other half to his two children from a previous marriage, Amanda Jewell and William Fisher, IV ("Fisher IV").
In August 1997, Ms. Fisher and the decedent separated. In June 1998, the decedent initiated divorce proceedings against Ms. Fisher. In October 1998, Ms. Fisher filed a counterclaim seeking a divorce, and obtained a temporary restraining order barring the decedent from transferring assets while the divorce action was pending.
The decedent's divorce attorney, Richard Lewis, filed an affidavit in the present will contest action. The affidavit and attachments, which include correspondence between Lewis and Ms. Fisher's divorce attorney, indicate that in January 1999, the decedent and Ms. Fisher reached a settlement agreement and scheduled an uncontested divorce hearing with the court for March 24, 1999.
On March 15, 1999, the decedent went to the emergency room at Adena Medical Center in Chillicothe. The hospital admitted him and diagnosed him with terminal liver illness. The decedent contacted Lewis and asked Lewis to prepare all documents necessary to ensure that his children received all his property after his death and that Ms. Fisher would receive nothing. The decedent requested a new will that appointed his daughter, Jewell, as executor, and divided his entire estate equally between Jewell and Fisher IV. He also requested a durable power of attorney that would enable Jewell to transfer all his property to herself and Fisher IV if the decedent became incapable of doing so himself.
On March 19, 1999, a close friend of the decedent, Terry Salyer, visited the decedent. According to Salyer's affidavit, the decedent informed Salyer that his lawyer was coming later that day to have him sign a new will and a power of attorney. Salyer stated in his affidavit that, on several occasions between the decedent's separation from Ms. Fisher and his illness, the decedent expressed his desire to change his will and give his children his entire estate.
A partner with Lewis' law firm, attorney William Cole, and a paralegal, Diana Swords, averred that they met with the decedent in his hospital room on March 19, 1999. The decedent greeted Cole by name, was alert, read the will and power of attorney prepared by Lewis, asked cogent questions, gave cogent answers to questions, and made intelligent comments on the matters Cole and the decedent discussed. Cole and Swords averred that the decedent clearly understood the nature of the documents he was executing and expressed his desire to give his estate to his children and not his estranged wife.
Lewis averred that on March 24, 1999, he appeared at the scheduled divorce hearing with a written separation agreement, which the decedent had seen and approved. Ms. Fisher's counsel also appeared. Ms. Fisher's counsel informed Lewis that Ms. Fisher was aware of the decedent's terminal illness, and that Ms. Fisher demanded one hundred thousand dollars before she would proceed with their previous agreement to terminate the marriage.
On April 11, 1999, the decedent died. The trial court in decedent's divorce dismissed the case.
On September 21, 1999, Jewell submitted the decedent's March 19, 1999 will to the trial court for probate. Ms. Fisher filed a will contest action, alleging that the March 19, 1999 will was invalid because the decedent lacked the capacity to execute it and because he was subject to undue influence.
In support of her claims, Ms. Fisher averred that she visited the decedent while he was in the hospital on an unknown date in March of 1999. Ms. Fisher stated that the decedent seemed very confused and slow, and at times seemed incapable of understanding simple matters. Additionally, Ms. Fisher presented the deposition testimony of her sister, Deanna Dickson, who accompanied Ms. Fisher during her visit to the decedent and also stated that the decedent seemed very disoriented and incoherent.
Finally, Ms. Fisher presented the decedent's medical records and the deposition testimony of Dr. Wayne Coats. Dr. Coats testified that he spoke with the decedent on March 17, 18, and 22, 1999. Dr. Coats' notes from his March 17, 1999, conversation with the decedent indicate that the decedent's thought processes were slow and that the decedent may not have been thinking appropriately, particularly in that the decedent denied being an alcoholic despite his admission that he drinks ten to twelve shots of bourbon per day. However, Dr. Coats testified that he did not conclude that the decedent was incompetent. In fact, Dr. Coats had the decedent sign informed consent forms prior to each procedure Dr. Coats performed, and as a matter of practice Dr. Coats will have a family member sign the consent form if he has any doubts about the patient's competency. Dr. Coats testified that the decedent probably suffered from alcohol encepalopathy, a condition that can cause intermittent mental confusion, such that the decedent may have been lucid at some times and confused at other times.
Jewell, as executor, filed a motion for summary judgment. The trial court, upon reviewing the evidence in the record and construing the evidence in Ms. Fisher's favor, determined that no genuine issues of material fact exist and that Ms. Fisher is not entitled to relief as a matter of law. Ms. Fisher appeals, asserting the following assignment of error:
 I. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS-APPELLEES.
 II.
Summary judgment is appropriate only when it has been established that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). See Bostic v. Connor
(1988), 37 Ohio St.3d 144, 146; Morehead v. Conley (1991),75 Ohio App.3d 409, 411. A disputed fact is not a "material fact" when, regardless if proved, it does not effect the result. See Clark v. MeigsEquipment Co. (1967), 10 Ohio App.2d 157, 161. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. Doe v. First United MethodistChurch (1994), 68 Ohio St.3d 531, 535.
The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111; Dresher, supra at 294-95.
 In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. Morehead, 75 Ohio App.3d at 411-12. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. See, also, Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
 A.
Ms. Fisher advances two arguments in support of her assignment of error. First, she asserts that a genuine issue of material fact exists as to whether the decedent possessed the capacity to make a valid will on March 19, 1999.
An otherwise valid will may be invalidated if the testator lacked testamentary capacity at the time he executed the will. Niemes v. Niemes
(1917), 97 Ohio St. 145, paragraph four of the syllabus.
 Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which he is engaged; Second, to comprehend generally the nature and extent of his property; Third, to hold in his mind the names and identity of those who have natural claims upon his bounty; Fourth, to appreciate his relation to the members of his family.
Id.; see, also, Swihart v. Dozier (1998), 127 Ohio App.3d 552, 559. The burden of proof in determining testamentary capacity is on the party contesting the will. Kennedy v. Walcutt (1928), 118 Ohio St. 442, paragraph six of the syllabus; Taylor v. Garinger (1986),30 Ohio App.3d 184, 186.
In this case, Ms. Fisher presented evidence in the form of her affidavit and the depositions of her sister and Dr. Coats. This evidence, when construed most strongly in her favor, indicates that the decedent might have been intermittently confused on the days surrounding March 19, 1999. Additionally, we accept as true Ms. Fisher's assertion that the decedent was incompetent in the late afternoon on the day she visited him, which might have been March 19, 1999.
In contrast, the uncontradicted affidavits of Cole and Swords establish that the decedent was competent and not confused at the time he executed the will. Rather, the decedent understood that he was executing a will, understood the nature and extent of his property, and expressed his understanding and desire to exclude his estranged wife from his will and instead convey his entire estate to his two children.
In addition, the affidavits and deposition testimony of others who were able to confirm that they saw and spoke with the decedent on March 19, 1999 indicate that he was competent and not confused on that day. Specifically, the decedent spoke with his friend, Salyer; with his accountant, Marsha Phillips; with his mother and father, Barbara and William Fisher, Jr.; with his daughter, Jewell; and with his son, William Fisher, IV. Each of these individuals gave sworn statements that the decedent behaved in a manner demonstrating his competence on March 19, 1999.
In short, Ms. Fisher failed to present any evidence that the decedent lacked testamentary capacity at the time that he executed his will on March 19, 1999. All the evidence in the record regarding the decedent's behavior at the time he executed his will indicates that he possessed the requisite understanding and knowledge to do so. Therefore, we find that the trial court did not err in determining that no genuine issue of material fact exists as to whether the decedent possessed the testamentary capacity necessary to execute the will.
 B.
Ms. Fisher also argues that the trial court erred in entering summary judgment against her because a genuine issue of material fact exists as to whether the will was the product of undue influence by the decedent's named beneficiaries, his children.
A will may be invalidated if it is the product of undue influence. Westv. Henry (1962), 173 Ohio St. 498, 510-511. A finding of undue influence
requires (1) a "susceptible" testator; (2) another's opportunity to exertundue influence on the testator; (3) improper influence exerted or attempted; and (4) a result showing the effect of such influence. Redmanv. Watch Tower Bible and Tract Society of Penn. (1994), 69 Ohio St.3d 98,101, citing West; In re Smith (1997), 120 Ohio App.3d 480, 486. The mere existence of influence will not nullify a given transaction. Krischbaumv. Dillon (1991), 58 Ohio St.3d 58, 68. "If the will or codicil, asfinally executed, expresses the will, wishes, and desires of thetestator, the will is not void because of undue influence." (Emphasissic.) West, supra, at 501. Issues related to undue influence are generally determined upon circumstantial evidence and the inferences drawn from a full presentation of facts that may be inconclusive when viewed separately. Bd. of Edn. v. Phillips (1921), 103 Ohio St. 622,626; Krischbaum at 66.
Our review of the record, even when viewing the evidence in a light most favorable to Ms. Fisher, reveals no evidence that Jewell and Fisher IV exerted undue influence on the decedent. In particular, Ms. Fisher presented no evidence indicating that the March 19, 1999 will does not express the intentions of the decedent. In contrast, Salyer's affidavit establishes that the decedent wanted to change his will long before he entered the hospital and was diagnosed with a terminal illness. Moreover, the circumstances surrounding the decedent's exclusion of Ms. Fisher from his will, particularly the fact that the two were involved in divorce proceedings, indicate his intentions.
Additionally, as we noted above, Ms. Fisher did not present evidence that gives rise to a genuine issue of material fact as to whether the decedent's mental condition left him susceptible to undue influence. In contrast, Jewell presented affidavits and deposition testimony indicating that the decedent possessed the requisite mental capacity to express his own intentions at the time he executed his will.
Thus, after reviewing the evidence and the inferences therefrom in Ms. Fisher's favor, we find no genuine issue of material fact as to whether the decedent's will is the product of undue influence.
 III.
In sum, we find that Ms. Fisher failed to present responsive evidence giving rise to a genuine issue of material fact as to whether the decedent possessed testamentary capacity and was not subject to undue influence in the execution of his March 19, 1999 will. Thus, Ms. Fisher cannot prevail in the will contest action as a matter of law. Accordingly, we overrule her assignment of error and affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.