DECISION AND JUDGMENT ENTRY
{¶ 1} Gerardo D. Trinidad ("Dr. Trinidad") appeals the decision of the Scioto County Court of Common Pleas denying his motion for summary judgment and granting Southern Ohio Medical Center's ("SOMC") motion for summary judgment. Dr. Trinidad argues that genuine issues of material fact exist. We find that Dr. Trinidad has failed to establish the existence of any material fact with regard to his allegations of fraud/misrepresentation, unilateral mistake, or lack of mutual assent. However, due to ambiguities in the language of the parties' contract, specifically as it relates to the computation of interest, we agree with Dr. Trinidad that a genuine issue of material fact exists as to the amount of the judgment to which SOMC is entitled. Dr. Trinidad also asserts that the trial court impermissibly evaluated the credibility of the witnesses in making its summary judgment determination. We find that the trial court's determination that no genuine issue of material fact exists is supported by the record even when all disputed issues of witness credibility are resolved in Dr. Trinidad's favor. Accordingly, we affirm the decision of the trial court in part, reverse in part, and remand this cause to the trial court for further proceedings consistent with this opinion.
 I. {¶ 2} In 1998, Dr. Trinidad learned of an opportunity to practice his profession at SOMC in Portsmouth, Ohio. Because Portsmouth is a medically underserved community, it is customary for SOMC to afford financial support to doctors willing to come into the community and establish a practice. In Dr. Trinidad's case, SOMC was willing to extend financial assistance in the form of loans for: (1) the purchase of new equipment; (2) student loan repayment; and, (3) a Practice Assistance Agreement ("PAA"), which would provide for guaranteed monthly income during Dr. Trinidad's first year of practice. Dr. Trinidad had several options with regard to repayment and/or forgiveness of the financial assistance he was to receive from the hospital. All parties understood that Dr. Trinidad had to repay the loan for the purchase of new equipment. However, he could choose to have SOMC forgive either the debt he incurred from SOMC's advances to him under the PAA or the debt he incurred from SOMC's payment of his student loans.I made these changes because I was having a hard time following the facts at first — it wasn't clear to me that the advances/student loan repayments were considered a debt that needed to be forgiven (instead, I thought he just got to choose one bonus or the other, and the one he didn't choose wouldn't occur at all).
Both parties understood that no matter which option Dr. Trinidad chose, the hospital would require repayment of the amounts advanced under the other option, although the parties dispute the extent of the required repayment.
 {¶ 3} Dr. Trinidad made at least one trip to Portsmouth in February 1998 to tour the hospital and the community before executing the PAA.[1] At some point during that visit, or shortly thereafter, Dr. Trinidad received samples of the three contracts. It is unclear exactly when Dr. Trinidad obtained these samples, or who provided them. However, the parties acknowledge that he did have them in his possession.
 {¶ 4} Sometime after his February 1998 trip to Portsmouth, Dr. Trinidad spoke with Randal Arnett, President and CEO of SOMC to request drafts of the three separate contracts for his review. Dr. Trinidad took the contracts to his attorney, and because of that consultation, Dr. Trinidad requested changes to all three contracts. Dr. Trinidad elected to have the student loan repayment forgiven, and, consequently, elected to repay monies advanced under the PAA. The extent of the required repayment forms the basis of this suit.
 {¶ 5} Approximately one week after he requested changes to the contracts, Dr. Trinidad went to Portsmouth to execute them. It is undisputed that Dr. Trinidad had an opportunity to review the final contracts on April 11, 1998, before signing them. The record is unclear as to whether he availed himself of that opportunity. However, the parties did execute the contracts on that date.
 {¶ 6} Pursuant to the terms of the various contracts, Dr. Trinidad relocated to the Portsmouth, Ohio area and commenced his orthopaedic practice in 1999. It is undisputed that from March 31, 1999 through October 12, 1999, SOMC advanced $129,260.66 to Dr. Trinidad and/or Scioto Valley Orthopaedics, Inc. pursuant to the terms of the PAA.
 {¶ 7} On February 27, 2002, SOMC filed suit against Dr. Trinidad, seeking to enforce the repayment provision of the PAA executed by Dr. Trinidad, and demanding judgment in the amount of $137,446.19 plus interest from February 1, 2000. Upon receipt of SOMC's complaint, Dr. Trinidad realized that the language in Section 3 of the PAA, regarding repayment of monies advanced pursuant to the PAA, was not the same language contained in Section 3 of the draft he reviewed with his attorney. Dr. Trinidad alleges that at some point after he reviewed the draft PAA with his attorney and before he executed the PAA, SOMC changed the language in Section 3 of the contract.
 {¶ 8} The draft that Dr. Trinidad and his attorney reviewed provided as follows: "To the extent SOMC has cumulatively advanced funds during such year to Physician in an amount when added to Physician's cash receipt, exceeds Six Hundred Thousand Dollars ($600,000.00), during the term of this Agreement, the Physician shall execute a note * * *." (Emphasis added).
 {¶ 9} The document actually executed by the parties provides: "To the extent SOMC has cumulatively advanced funds during such year to Physician up to a maximum amount of Six Hundred Thousand Dollars ($600,000.00), during the term of this Agreement, the Physician shall execute a note * * *." (Emphasis added).
 {¶ 10} Due to the conflict between the language in the draft and the PAA actually executed by the parties, Dr. Trinidad filed an answer and counterclaim, alleging intentional misrepresentation, fraudulent concealment, and negligent misrepresentation.
 {¶ 11} The parties conducted discovery, including the depositions of Dr. Trinidad, Randal Arnett, President and CEO of SOMC, and Mr. Arnett's administrative assistant, Diane Applegate. Upon completing discovery, each party filed a motion for summary judgment and a memorandum in opposition to the opposing party's motion. The trial court issued a judgment entry granting SOMC's motion, awarding SOMC a judgment in the amount prayed for in its complaint, and denying Dr. Trinidad's motion.
 {¶ 12} Dr. Trinidad filed a timely notice of appeal, and presents the following assignments of error for our review:
(1) The trial court erred in granting summary judgment to Southern Ohio Medical Center and denying Gerardo D. Trinidad's right to trial when genuine issues of material fact exist and remain unresolved; and, (2) The trial court erred in granting summary judgment to Southern Ohio Medical Center and denying Gerardo D. Trinidad's right to trial by making impermissible determinations as to the credibility of the parties and witnesses.
 II. {¶ 13} Summary judgment is appropriate when the court finds that the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56. See Bostic v. Connor (1988), 37 Ohio St.3d 144,146; Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411. "In reviewing the propriety of summary judgment, an appellate court independently reviews the record to determine if summary judgment is appropriate. Accordingly, we afford no deference to the trial court's decision in answering that legal question." Morehead v. Conley, 75 Ohio App.3d at 411-12. See, also, Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806,809.
 {¶ 14} The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988)38 Ohio St.3d 112, 115. The moving party bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist."Morehead v. Conley, 75 Ohio App.3d at 413.
 A. {¶ 15} In his first assignment of error, Dr. Trinidad contends that genuine issues of material fact remain with respect to the following issues: (a) whether the parties mutually assented to all material terms of the PAA; (b) whether a unilateral mistake occurred in the execution of the PAA; and, (c) whether SOMC engaged in fraudulent or inequitable conduct in the inducement/execution of the PAA. We disagree.
 {¶ 16} Dr. Trinidad argues that there was no mutual assent to the terms of the PAA as executed by the parties because he did not realize that the terms of the contract had been changed after he reviewed an earlier draft with his attorney. Dr. Trinidad is correct in his assertion that the "[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration * * *, a manifestation of mutual assent, and legality of object and of consideration." Kostelnikv. Helper (2002), 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16. Here, we have the PAA, signed by both parties, that provides for repayment of all funds advanced, up to $600,000. Despite all of Dr. Trinidad's arguments, his signature on the PAA is some evidence of his assent to its terms.
 {¶ 17} The parol evidence rule provides that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." 11 Williston on Contracts (4 Ed. 1990) 569-70, Section 33:4.
 {¶ 18} The Ohio Supreme Court has noted that "by prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments. `It reflects and implements the legal preference, if not the talismanic legal primacy, historically given to writings. It effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superceded by the written document.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27-8, citing Williston on Contracts, supra, at 541-48, Section 33:1. Thus, in the absence of fraud or mistake, we presume Dr. Trinidad's signature on the PAA is a manifestation of his assent to the terms contained therein.
 {¶ 19} Generally speaking, the elements of fraud include (1) a misrepresentation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, (4) with the intent to mislead another to rely on it, (5) justifiable reliance on the misrepresentation, and (6) a resulting injury proximately caused by that reliance. See Gaines v. Preterm-Cleveland, Inc.(1987), 33 Ohio St.3d 54,55; Burr v. Stark Cty. Bd. Of Commrs. (1986), 23 Ohio St.3d 69, at paragraph two of the syllabus.
 {¶ 20} Here, Dr. Trinidad argues that SOMC fraudulently induced him to enter into the PAA that contained material terms significantly different from the terms of the draft agreement he had previously reviewed. Dr. Trinidad alleges in his counterclaim that SOMC affirmatively represented the copy of the PAA the parties signed contained materially the same terms as those in the PAA Dr. Trinidad had previously reviewed. However, in his motion for summary judgment and his response to SOMC's motion, Dr. Trinidad presents absolutely no evidence to support his claim that Mr. Arnett made such an affirmative representation. Instead, Dr. Trinidad alleged below, and now alleges, that SOMC's silence as to the material changes in the PAA constitutes its alleged misrepresentation.
 {¶ 21} Dr. Trinidad now cites to Randal Arnett's affidavit, submitted with SOMC's motion for summary judgment as his sole proof of SOMC's alleged fraudulent representation. In that affidavit, Mr. Arnett states that "I made no representations to Defendant that the contracts were materially the same as the draft contract originally sent to him." Dr. Trindad argues that "SOMC's continued silence regarding the now apparent changes to Section 3 is equivalent to a positive representation then that there were no changes made to Section 3." We disagree.
 {¶ 22} The Ohio Supreme Court has previously addressed the scope of the duty to disclose where a party alleges fraud. In State v. Warner
(1990), 55 Ohio St.3d 31, 39, the court discussed Chiarella v. UnitedStates (1980), 445 U.S. 222, wherein the United States Supreme Court discussed the possible situations in which a duty to disclose may arise. Warner, at 53. The Warner court quoted Chiarella, wherein the U.S. Supreme Court held that: "* * * [O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.' * * *" (Footnote omitted.) Id. quoting Chiarella at 228. Thus, SOMC's failure to inform Dr. Trinidad of the changes to the agreement is only fraudulent if SOMC had a duty to disclose such information to Dr. Trinidad.
 {¶ 23} Here, Dr. Trinidad has not alleged any fiduciary relationship between the parties, nor has he presented any evidence to demonstrate that this was anything but an arm's length business transaction. Further, the fact that he sought independent legal counsel to review the proposed contracts demonstrates that Dr. Trinidad believed this to be an arm's length business transaction in which he would need to protect his own interests. The Ohio Supreme Court has previously held that in an arm's length business transaction "each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." Blon v. Bank One, Akron, N.A. (1988),35 Ohio St.3d 98, 101.
 {¶ 24} The record is unclear as to whether Dr. Trinidad actually read the PAA that Mr. Arnett handed to him for his signature on April 11, 1998. Mr. Arnett's affidavit states that "Dr. Trinidad read and signed the agreement." Dr. Trinidad's deposition testimony is not clear as to whether he actually read the PAA presented to him on April 11, but his testimony clearly demonstrates, and it is undisputed, that he had the opportunity to read the contract that day. His testimony further demonstrates that no one prevented him from doing so. SOMC had no duty to disclose material information to Dr. Trinidad, and SOMC did not prevent Dr. Trinidad from reading the document before signing it. Therefore, its failure to inform him of the changes in the document before he signed it does not constitute a misrepresentation.
 {¶ 25} Because Dr. Trinidad has presented no evidence of an affirmative misrepresentation, and SOMC had no duty to speak with regard to the changes in the document, we find that there is no evidence in the record to support Dr. Trinidad's claim of fraud/misrepresentation. As Dr. Trinidad has failed to submit any evidence of this essential element of his claim, for which he bears the burden of proof, we find that the trial court appropriately granted SOMC summary judgment with respect to that claim.
 B. {¶ 26} Dr. Trinidad also argues that we should reform the PAA due to his unilateral mistake. The subject of unilateral mistake is addressed in 1 Restatement of the Law 2d, Contracts (1981) 394, Section 153, as follows: "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." The mistaken party must bear the risk of the mistake if: "(a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." Id. at § 154.
 {¶ 27} Here, Dr. Trinidad contends that SOMC admits a unilateral mistake occurred, in that the hospital admits it corrected a "scrivener's error" that was contained in prior versions of the PAA. SOMC does not deny that it discovered the alleged "scrivener's error" and corrected the PAA to reflect its understanding of the agreement with Dr. Trinidad. However, Mr. Arnett testified in his deposition that the contract, as executed on April 11, "reflected exactly what Doctor Trinidad and I spoke of." Further, Mr. Arnett's affidavit specifically states that in a telephone conversation, he told Dr. Trinidad "* * * since [he] had now elected the student loan forgiveness option, he would be required to pay back to Southern Ohio Medical Center all money received under the income guarantee agreement." (Emphasis sic.) Thus, the changes initiated by SOMC comport with its understanding of the agreement, and SOMC had no reason to suspect that Dr. Trinidad relied upon the language in the draft agreement that would, essentially, negate his obligation to repay any monies advanced pursuant to the PAA.
 {¶ 28} Dr. Trinidad's deposition testimony reflects that he does remember having a telephone conversation with Mr. Arnett, but that he does not recall the details of that conversation. Dr. Trinidad's testimony plainly reflects that he "do[es] not recall" the substance of any conversation with representatives of SOMC as it relates to the payback of funds advanced pursuant to the PAA. Dr. Trinidad did admit in his deposition testimony that he understood there would be some type of payback, "depending on the terms of the contract." Notably, Dr. Trinidad has offered no evidence to counter Mr. Arnett's deposition testimony or affidavit, both of which clearly reflect that the parties discussed payback of all monies advanced pursuant to the PAA.
 {¶ 29} Despite his admission that he believed he would need to make some type of payback, Dr. Trinidad argues that the language contained in the draft PAA was the language that garnered his assent, and that enforcement of the PAA, as executed, is unfair. However, the interpretation of the contract, as advanced by Dr. Trinidad, would render the provisions regarding the cash flow support guarantee and the repayment of the funds advanced pursuant to that guarantee irreconcilable.
 {¶ 30} Dr. Trinidad's understanding of the PAA would require SOMC to advance funds only up to a maximum amount of $600,000. Yet, he would only have to repay any amount that exceeded $600,000. The agreement, as argued by Dr. Trinidad, would never require any repayment because there could never be enough funds distributed under the agreement to trigger his "obligation" of repayment. The agreement advanced by Dr. Trinidad would render his obligation to repay any amounts advanced by SOMC illusory, and effectively reduce the repayment provision to mere surplusage. This argument flies in the face of Dr. Trinidad's admission that he understood the agreement would require some type of payback.
 {¶ 31} SOMC's admission that there was a scrivener's error in the draft PAA, in and of itself, does not constitute an admission that the other elements of unilateral mistake exist. Based upon his conversations with Dr. Trinidad, Mr. Arnett and SOMC had no reason to know that Dr. Trinidad had mistakenly relied upon the language of the draft contract that would effectively eliminate Dr. Trinidad's obligation to repay any of the practice assistance.
 {¶ 32} Even if we assume, arguendo, that Dr. Trinidad has proven that he made a unilateral mistake, that his mistake had a material effect on the agreed exchange of performance that was adverse to him, and that SOMC had reason to know of his mistake, Dr. Trinidad could not prevail because his mistake occurred due to his own negligence. The Ohio Supreme Court has previously held that "[a] person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended when he could have known the truth by merely looking when he signed. We quote from the language of Mr. Justice Hunt inUpton, Assignee v. Tribilcock (1875), 91 U.S. 45, 50, 23 L.Ed. 203: `It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written; but such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.'"McAdams v. McAdams (1909), 80 Ohio St. 232, 240-41.
 {¶ 33} It is undisputed that Dr. Trinidad had the opportunity to read the PAA prior to signing it on April 11, 1998. If he read the contract, and did not question the changes made by SOMC, or, if he did not read the contract at all, the result is the same — Dr. Trinidad is charged with the obligation to read and learn the content of what he signs before he signs it.
 {¶ 34} Dr. Trinidad had the means and the opportunity to prevent the mistake he now claims is prejudicial to him. Dr. Trinidad is a literate, well-educated man, presumably in possession of his faculties. He retained an attorney to review the contracts that he was about to execute. His attorney suggested changes which SOMC agreed to make. For this reason, Dr. Trinidad knew that the documents presented to him on April 11, 1998 were not identical to those he had reviewed with his attorney.
 {¶ 35} Having determined that there is no evidence of fraud, and that Dr. Trinidad's own negligence caused his unilateral mistake, we find that Dr. Trinidad's undisputed signature on the PAA, executed on April 11, 1998, constitutes his assent to the terms contained therein. Accordingly, we find that no genuine issue of material fact remains with respect to Dr. Trinidad's allegations of fraud, unilateral mistake, or lack of mutual assent, and overrule Dr. Trinidad's first assignment of error as it relates to the trial court's granting of SOMC's motion for summary judgment.
 C. {¶ 36} Although we find that no genuine issue of material fact exists with regard to Dr. Trinidad's allegations of fraud, mistake, or lack of mutual assent, our review of the contract as executed by the parties, reveals that there is a genuine issue of material fact as it relates to the amount of the judgment to which SOMC is entitled. In its complaint, SOMC demands judgment in the amount of $137,446.19 plus interest from February 1, 2000. SOMC's breakdown of its prayer reflects that $129,260.66 represents practice assistance actually distributed to Dr. Trinidad pursuant to the terms of the PAA. The remaining $8,185.53 represents interest on the various disbursements, presumably from the date of each disbursement until February 1, 2000, the date that SOMC claims the PAA required Dr. Trinidad to execute a note memorializing the debt. Thus, SOMC seeks to collect interest on all amounts advanced to Dr. Trinidad under the PAA from the date that the disbursements were made until the date that Dr. Trinidad reimburses SOMC in full.
 {¶ 37} It is unclear from the trial court's judgment whether the court looked at the face of the contract itself and determined that it entitled SOMC to such interest, or whether the court simply accepted SOMC's prayer for relief as an accurate interpretation of the contract. We find, however, that the language of the contract regarding the calculation of interest to be ambiguous.
 {¶ 38} Specifically, section 3, which provides for repayment of any funds advanced "with interest" does not specify whether the interest is to begin accruing at the time of the disbursement, or at the time Dr. Trinidad was to execute the note. Additionally, section 3 provides for interest to be paid at the "market rate," yet does not specify how the parties are to determine the "market rate," nor does SOMC state anywhere in the record the rate of interest it elected to apply to the balance.
 {¶ 39} If the contract language was clear and unambiguous, its interpretation would be a matter of law. However, because the contract is ambiguous, the court must address the meaning of the language to ascertain the parties' intent. This function involves a question of fact. Purdin v. Hitchcock (Jan. 21, 1993) Adams App. No. CA531, citingLatina v. Woodpath Development Co. (1991), 57 Ohio St.3d 212, 214; InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322; Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241.
 {¶ 40} Because a genuine issue of material fact exists regarding the amount of the judgment to which SOMC is entitled, we reverse the decision of the trial court, solely as it relates to the amount of the judgment, and remand this case to the trial court for further proceedings consistent with this decision.
 III. {¶ 41} In his second assignment of error, Dr. Trinidad alleges that the trial court erred by making impermissible determinations as to the credibility of the parties and witnesses. He alleges that there is substantial conflicting testimony in the record, and, therefore, the trial court impermissibly made determinations as to the credibility of the parties and witnesses. We disagree.
 {¶ 42} In his assignment of error, Dr. Trinidad attempts to characterize his testimony and the testimony of Mr. Arnett as conflicting, in that he argues they have "very different recollections as to the relevant facts and circumstances surround (sic) the Practice Assistance Agreement negotiated five years ago." However, this case does not present a situation where the parties allege differing recollections of the conversations leading up to the execution of the agreement or of affirmative representations made by Mr. Arnett regarding the content of the agreement. On the contrary, Mr. Arnett's testimony as to his conversations with Dr. Trinidad regarding payback of monies advanced is undisputed. Further, Dr. Trinidad and SOMC agree that no representations were made with regard to the content of the PAA.
 {¶ 43} We note that Dr. Trinidad did not submit any evidence to contradict Mr. Arnett's affidavit and deposition testimony recalling the conversations they had regarding the payback provisions. As previously discussed, Dr. Trinidad recalled having conversations with Mr. Arnett, but could not recall any details of their conversations with respect to discussion of the payback provision in the PAA. As the non-moving party, Dr. Trinidad is entitled to have the evidence construed most strongly in his favor. However, it is well-settled law that where the non-moving party fails to submit countering affidavits, the moving party's affidavits are accepted as true. Stemen v. Shibley (1982) 11 Ohio App.3d 263,268-69, citing Adickes v. S.H. Kress Co. (1970), 398 U.S. 144,161; Jones v. Halekulani Hotel, Inc. (C.A. 9, 1977), 557 F.2d 1308,1310. See, also, Shepherd v. United Parcel Serv. (1992) 84 Ohio App.3d 634,642-43.
 {¶ 44} As previously discussed, our review of the trial court's decision reflects that: (1) it is undisputed that SOMC made no affirmative representation that the agreement, executed on April 11, 1998, was identical to the draft agreement reviewed by Dr. Trinidad and his attorney; (2) SOMC's undisputed silence regarding any changes to the agreement could not constitute a misrepresentation because SOMC had no duty to speak in the context of this arm's length transaction; and, (3) pursuant to the parol evidence rule, in the absence of fraud or mistake, Dr. Trinidad's signature on the contract is presumed to constitute his assent to the terms contained therein.
 {¶ 45} Based upon our review of the record we find that the relevant testimony is not conflicting, and there is no issue raised on summary judgment which manifestly turns on the testimony or credibility of the witnesses. Accordingly, we overrule Dr. Trinidad's second assignment of error.
 IV. {¶ 46} In conclusion, we find that there is no genuine issue of material fact with regard to Dr. Trinidad's allegations of fraud/misrepresentation, unilateral mistake, or lack of mutual assent. Reviewing the evidence in a light most favorable to Dr. Trinidad, we find that reasonable minds can come to only one conclusion, and that conclusion is adverse to Dr. Trinidad. Therefore, SOMC is entitled to judgment as a matter of law. However, we do find that there is a genuine issue of material fact regarding the amount of the judgment to which SOMC is entitled. We also find that the trial court's determination that no genuine issue of material fact exists is supported by the record even when all disputed issues of witness credibility are resolved in Dr. Trinidad's favor. Accordingly we affirm the judgment of the trial court granting SOMC's motion for summary judgment, we reverse the judgment of the trial court granting SOMC judgment in the amount prayed for in its complaint, and remand this cause to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Evans, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] The parties dispute the exact number of trips Dr. Trinidad made to Portsmouth. We, however, find that the number of trips has no bearing upon the outcome of this case.