[Cite as *Precision Strip, Inc. v. Dircksen*, 2020-Ohio-6668.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

PRECISION STRIP, INC.,

      PLAINTIFF-APPELLEE,                 CASE NO.  2-19-12

      v.

STEVEN DIRCKSEN, ET AL.,            O P I N I O N

      DEFENDANTS-APPELLANTS.

---

PRECISION STRIP, INC.,

      PLAINTIFF-APPELLEE,                 CASE NO.  2-20-01

      v.

STEVEN DIRCKSEN, ET AL.,            O P I N I O N

      DEFENDANTS-APPELLANTS.

---

**Appeals from Auglaize County Common Pleas Court**
**Trial Court No. 2019 CV 0068**

**Judgments Affirmed in Part, Reversed in Part and Causes Remanded**

**Date of Decision:   December 14, 2020**

---

APPEARANCES:

    *R. Mark Halligan, David G. Kern and Thomas W. Kerrigan, II*
               **for Appellants**

    *John F. Marsh and James L. Thieman* **for Appellee**

**SHAW, P.J.**

{¶1} Defendants-appellants, Steven Dircksen ("Dircksen") and Innovative Engineered Solutions of Minster, LLC ("IES") (collectively, "Appellants") appeal the October 10, 2019 judgment of the Auglaize County Court of Common Pleas declaring plaintiff-appellee, Precision Strip Inc. ("Precision Strip"), the sole owner of intellectual property rights pertaining to innovations, inventions, and improvements Dircksen developed while he was an employee at Precision Strip. Appellants also appeal the December 5, 2019 judgment of the same court granting Precision Strip a preliminary and a permanent injunction enjoining Appellants from disclosing, sharing or using the disputed inventions, innovations, and trade secrets, and from accessing, reviewing, manipulating, copying, disclosing, sharing or using any of the drawings, photographs, videotapes, digital recordings, or images of the disputed inventions, innovations, and trade secrets in Appellants' possession.

{¶2} On appeal, Appellants raise numerous assignments of error challenging the trial court's decision to first conduct a bench trial on the equitable declaratory judgment actions regarding the ownership of the intellectual property, while reserving the adjudication of the remaining claims, counterclaims and cross claim in a separate trial at a later time. Appellants also take issue with the trial court's decision to consolidate the hearings on Precision Strip's applications for a preliminary and a permanent injunction. Appellants further assign error on

substantive grounds to: the trial court's declaratory judgment finding that the Employment Agreement between Dircksen and Precision Strip vested sole ownership rights of the inventions, innovations, and improvements in Precision Strip; the trial court's finding that the inventions, innovations, and improvements constituted trade secrets; the trial court's finding that the record pertaining to the proceedings was eligible to be sealed and protected under Ohio's Uniform Trade Secrets Act; and the trial court's determination that Precision Strip is entitled to permanent injunctive relief.

*Relevant Facts*

{¶3} Founded in 1977 and headquartered in Minster, Ohio, Precision Strip is a "toll processor" of metals mainly servicing metal mills (i.e. producers of steel or aluminum) by providing value added services to meet the specifications of the mill's customer, also known as the "end user," commonly an entity in the automotive or appliance industries. These services include, among others, slitting, blanking, and adding lubrication to the metals. Once the service is complete, Precision Strip packages and delivers the product to the end user.

{¶4} Precision Strip occupies a niche as the largest toll processor in the country with thirteen plants regionally employing approximately 1,400 people. Precision Strip employs an extensive engineering department and prides itself on cultivating an innovative and creative environment which has allowed it to become

self-proclaimed "problem solvers" for its customers by inventing tools and making proprietary adaptations to common metal processes to allow it to more efficiently provide a particular service for its customer.

**{¶5}** In 1995, Appellant Dircksen became employed by Precision Strip as a maintenance technician and executed a binding Employment Agreement. The Employment Agreement included several provisions regarding intellectual property and trade secrets relating to any of the products manufactured or sold by Precision Strip or "which grow out of or relate to any experimental, developmental, manufacturing, commercializing or other work carried out by the Company." (Ex. A). Specifically, the Employment Agreement included a provision stating that the "Employee's rights and interests therein shall pass to the Company at the time of conception of acquisition [sic] of the Employee." (Id.). Throughout the tenure of his employment with Precision Strip, Dircksen reaffirmed his acknowledgement of these principles, in addition to the requirement to maintain confidentiality of trade secrets developed during course of his employment, by signing updated versions of the company's employee code of conduct.

**{¶6}** Dircksen's natural talent in the field of mechanical engineering led him to ascend through the ranks of Precision Strip with him eventually being promoted to Engineering Project Manager.

{¶7} In the Fall of 2014, Precision Strip was tasked with processing a voluminous amount of aluminum by adding a dry lubrication to the metal that a customer, an aluminum mill, was supplying to a large automobile manufacturer. At the time, the machines on the market processing dry lubricants were rife with problems and design flaws hindering the efficiency of the lines at the plants where the machines were installed. Precision Strip had purchased one of these machines a few years prior to receiving this project, but had not used the machine for processing a large volume on such a short timeframe.

{¶8} Dircksen was assigned to lead a team of Precision Strip employees in developing modifications and adaptations to address the production impediments with the dry lubricant machine. With the resources provided by Precision Strip, such as parts, labor, and technology, Dircksen and his team worked tirelessly to solve the problems relating to the dry lubricant application by inventing several adaptions and parts to make the machines operate more seamlessly, and to be able to deliver the product to their customer's end user on its desired timeline. As a result of these inventions, innovations, and improvements, dry lubrication subsequently became an integral part of Precision Strip's business because no other dry lubricant processor/competitor possessed this technology.

{¶9} In 2018, Dircksen voluntarily left his employment with Precision Strip to focus on his own business, IES, which he had cultivated on his own time with

Precision Strip's knowledge and approval. At the time, IES primarily consulted with clients in the hot tub/spa industry and was not involved with any of the processes Dircksen had developed while employed at Precision Strip.

{¶10} In February of 2019, Dircksen had lunch with Don Bornhorst, Vice President of Operations at Precision Strip. The conversation was surreptitiously recorded by Dircksen without Bornhorst's knowledge. Dircksen informed Bornhorst that he had been approached to design and construct a machine for Precision Strip's largest customer, a steel mill, which involved adding a lubrication to steel and that he was in the process of devising plans to construct the machine.

{¶11} Representatives of Precision Strip contacted Dircksen and reminded him of his employment agreement and subsequent affirmations of the employee code of conduct. Precision Strip maintained that the machine Dircksen intended to build for the steel mill was substantially similar to the one he had modified and improved while employed at Precision Strip, and that incorporating the technology he developed into that machine would expose Precision Strip's trade secrets, causing it irreparable harm. Dircksen maintained that he was the owner of the inventions, innovations, and improvements, and that Precision Strip merely had residual "shop rights" to the intellectual property. Therefore, Dircksen maintained that he and IES were free to construct the machine without Precision Strip's approval or interference.

*Procedural History*

**{¶12}** On May 31, 2019, Precision Strip filed a complaint against Appellants Dircksen and IES alleging that Dircksen had breached his employment agreement with Precision Strip and that Appellants had misappropriated Precision Strip's trade secrets in violation of the Ohio Uniform Trade Secrets Act. Precision Strip also requested a declaratory judgment seeking the trial court to determine under the language of the Employment Agreement that Dircksen has no ownership interest in the intellectual property pertaining to the inventions, innovations, and improvements to the dry lubrication machining process he developed while employed at Precision Strip. Notably, Precision Strip did not seek monetary damages, but instead requested specific performance and other equitable remedies, including injunctive relief preventing Appellants from further violating Dircksen's Employment Agreement and from utilizing, storing, possessing, and distributing any of Precision Strip trade's secrets, proprietary or confidential information.

**{¶13}** On June 5, 2019, Precision Strip filed a Motion for Preliminary Injunction seeking to enjoin Appellants from materially breaching Dircksen's Employment Agreement with Precision Strip by improperly using the intellectual property owned by Precision Strip and offering to provide services to a Precision Strip customer using the confidential information.

{¶14} On June 25, 2019, the trial court ordered that the hearing on Precision Strip's application for a preliminary injunction be consolidated with the hearing on its application for a permanent injunction pursuant to Civ.R. 65(B)(2).  Appellants filed objections opposing the trial court's consolidation order and filed a jury demand on all issues triable to a jury.  Appellants maintained that their right to a jury trial would be compromised by a consolidation of the injunction hearings.

{¶15} On July 9, 2019, the trial court ordered the parties to submit briefs identifying which claims were matters for the determination by a jury and which claims were to be decided by the court.

{¶16} Appellants filed a Motion to Dismiss the complaint pursuant to Civ.R. 12(b)(6),  which was subsequently overruled by the trial court.

{¶17} On August 14, 2019, Appellants filed a Motion to Bifurcate Preliminary and Permanent Injunction Hearing along with their brief on the claims triable to a jury, the submission of which was previously ordered by the court.  The same day, the trial court denied the Motion to Bifurcate citing various grounds, including noting that the complaint only sought injunctive and declaratory relief, a lack of a pending temporary restraining order, and the need for a timely conclusion on the matter.[1]

---

[1] Appellants filed a notice of appeal from the trial court's judgment overruling their motion to bifurcate the injunction hearings.  This Court later dismissed the appeal for lack of a final appealable order.

{¶18} On August 21, 2019, Appellants filed their answer denying the allegations contained in Precision Strip's complaint. Appellants also asserted counterclaims and a third-party complaint against two of Precision Strip's corporate officers, Don Bornhorst, Vice President of Operations, and Joe Wolf, President.

{¶19} With respect to their counterclaims and cross claim, Appellants alleged that Precision Strip had asserted in bad faith a specious trade secret misappropriation claim in its complaint for anticompetitive purposes. Specifically, Appellants alleged that Precision Strip filed this lawsuit under the guise of the misappropriation of trade secrets as a veiled attempt to deprive Appellants of their right to engage in fair and lawful competition. Appellants further maintained that Dircksen is the rightful owner of the inventions, innovations, and improvements and sought a declaratory judgment on his ownership rights. Appellants also alleged a claim of tortious interference with business practices against Precision Strip, Bornhorst, and Wolf for their alleged interference with Appellants' project which resulted in the steel mill client cancelling plans with IES for a $1,150,000 business deal involving the construction of the dry lubrication machine.

{¶20} Appellants sought compensatory and expectancy damages for the tortious interference counterclaim; attorney's fees, costs, and punitive damages for their statutory counterclaim that Precision Strip maintained a specious trade secret misappropriation claim for anticompetitive purposes. Appellants also sought

equitable relief in the form of a declaratory judgment relating to the ownership of intellectual property at issue, and an injunction enjoining Precision Strip from further interfering with Appellants' business.

{¶21} On August 29, 2019, the trial court conducted a pre-trial hearing permitting the parties to present their respective positions regarding which claims were triable to the court and which ones should be determined by a jury, in addition to discussing other pre-trial matters.

{¶22} On August 30, 2019, the trial court issued a journal entry ordering the parties' competing claims for declaratory judgments on the ownership of the intellectual property at issue to be tried to the court in a bench trial prior to Precision Strip's claims for injunctive relief, and prior to the adjudication of the remaining claims, counterclaims and cross claim. The trial court reasoned that this order of procedure ensured that the trial court determined the appropriate equitable claims and questions of law, while preserving any right to a jury trial that Appellants may have.

{¶23} On September 20, 2019, Precision Strip filed a Motion for Leave to File Confidential Documents under Seal and for an Order Governing the use of Confidential Information at Hearing. In this motion, Precision Strip informed the trial court that it intended to introduce confidential documents and information during the trial to the court that, if publicly disclosed, would cause it irreparable

harm. Precision Strip requested the trial court issue an order placing the confidential documents and information under seal, closing the courtroom, and sealing the transcripts from the proceedings under R.C. 1333.65, which provides for the protection of alleged trade secrets. Appellants' filed a memorandum opposing the motion, specifically challenging the allegation that the information at issue constituted trade secrets.

{¶24} On September 24 and 25, 2019, the trial court conducted a bench trial on the parties' competing declaratory judgment actions regarding ownership of the intellectual property. Prior to hearing evidence, the trial court allowed the parties to argue their respective positions regarding Precision Strip's motion to seal the alleged trade secrets and confidential information. The trial court then granted the motion in part, finding that Precision Strip had established that the confidential information and intellectual property at issue constituted "alleged trade secrets" under the statute and placed the information under seal. However, the trial court denied the motion in part, declining to close the courtroom to the public. The trial court proceeded to hear from several witnesses regarding the ownership issue of the intellectual property in dispute. Numerous documents were admitted as exhibits and placed under seal.

{¶25} On October 10, 2019, the trial court issued Findings of Fact and Conclusions of Law granting declaratory judgment in favor of Precision Strip.

Specifically, the trial court found that the Employment Agreement between the parties governed the issue of ownership and explicitly vested sole ownership of the intellectual property in Precision Strip. Accordingly, the trial court determined that Appellants had no property rights to the inventions, innovations, and improvements and dismissed their claim for declaratory relief. The trial court also found that the information in dispute constituted trade secrets, ordered the transcript of the proceedings be placed under seal pursuant to R.C. 1333.65, and further certified the judgment as a final appealable order.

{¶26} Appellants filed a notice of appeal from the trial court's October 10, 2019 judgment granting declaratory judgment in favor of Precision Strip and finding that the innovations, inventions, and improvements are trade secrets.

{¶27} On December 3, 2019, the trial court conducted a consolidated hearing on Precision Strip's applications for a preliminary and a permanent injunction.

{¶28} On December 5, 2019, the trial court issued a judgment entry permanently enjoining Appellants from disclosing, sharing or using the disputed inventions, innovations, and trade secrets, and from accessing, reviewing, manipulating, copying, disclosing, sharing or using any of the drawings, photographs, videotapes, digital recordings, or images of the disputed inventions, innovations, and trade secrets in their possession.

{¶29} Appellants filed a notice of appeal from the trial court's December 5, 2019 Judgment Entry granting Precision Strip injunctive relief. This Court consolidated this appeal with the one pending from the trial court's October 10, 2019 Judgment on declaratory relief for the purposes of briefing and oral argument.

{¶30} On appeal, Dircksen and IES raise the following assignments of error for our review.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED DENYING DIRCKSEN AND IES THEIR RIGHT TO A JURY TRIAL.**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED IN FINDING THAT DIRCKSEN AND IES WAIVED THEIR CONSTITUTIONAL RIGHT TO A TRIAL BY JURY.**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT VIOLATED DIRCKSEN AND IES'S DUE PROCESS RIGHTS UNDER THE U.S. AND OHIO CONSTITUTIONS BY HOLDING A TRIAL AND ADJUDICATING CLAIMS WITH NO NOTICE.**

**ASSIGNMENT OF ERROR NO. 4**

**THE TRIAL COURT ERRED IN DENYING THE MOTION TO BIFURCATE THE PRELIMINARY AND PERMANENT INJUNCTION HEARING.**

**ASSIGNMENT OF ERROR NO. 5**

**THE TRIAL COURT COMMITTED REVERS[I]BLE ERROR IN ITS INTERPRETATION OF THE EMPLOYMENT AGREEMENT.**

**ASSIGNMENT OF ERROR NO. 6**

**THE TRIAL COURT ERRED IN ITS ADJUDICATION OF PLAINTIFF  AND DEFENDANTS' STATUTORY TRADE SECRETS CLAIMS.**

**ASSIGNMENT OF ERROR NO. 7**

**THE TRIAL COURT ERRED BY GRANTING PSI'S DECLARATORY JUDGMENT CLAIM AND DENYING DIRCKSEN AND IES'S DECLARATORY JUDGMENT CLAIM.**

**ASSIGNMENT OF ERROR NO. 8**

**THE TRIAL COURT ERRED BY GRANTING PSI'S MOTION FOR PERMANENT INJUNCTION.**

**ASSIGNMENT OF ERROR NO. 9**

**THE TRIAL COURT ERRED WHEN IT STRUCK ALL OF THE TESTIMONY DIRCKSEN AND IES SOUGHT TO ELICIT REGARDING THE SIX FACTORS.**

**ASSIGNMENT OF ERROR NO. 10**

**THE TRIAL COURT ERRED WHEN IT ORDERED THE ENTIRE RECORD OF THE TRIAL COURT PROCEEDINGS BE PLACED UNDER SEAL AND ORDERED DEFENDANT[S] AND COUNSEL NOT TO DISCLOSE THE "TRADE SECRETS" WITHOUT PRIOR APPROVAL, PURSUANT TO R.C. 1333.65.**

{¶31} For clarity of the issues raised and ease of discussion, we elect to address some of the interrelated assignments of error together.

*First Assignment of Error*

{¶32} In the first assignment of error, Appellants challenge the trial court's procedural decision to first conduct a trial to the court on the parties' competing declaratory judgment actions while reserving the adjudication of the remaining claims, counterclaims, and cross claim for a separate trial at a later date. Specifically, Appellants claim that there are common issues of fact underlying the equitable and legal claims and therefore, the trial court's decision to bifurcate the equitable declaratory judgment actions from the other legal claims, counterclaims, and cross claim in order to hear the equitable claims first violated their right to a jury trial under the Federal and Ohio constitutions.

{¶33} For its part, Precision Strip argues that under Ohio law a right to a jury trial does not exist if the relief sought is equitable in nature rather than legal. Precision Strip further argues that in a case such as this, where there are both legal and equitable claims for relief and the money demanded is incidental and ancillary to the equitable claims and can only be awarded if the equitable relief is granted first, then the case is predominantly an equitable action and there is no corresponding right to a jury. Thus, Precision Strip asserts that the trial court had the discretion under its inherent and explicit authority to expedite or economize the

proceedings and to hold a separate trial on the equitable declaratory judgment actions first, while expressly preserving Appellants' right to a jury trial on their legal counterclaims and cross claim in a subsequent trial.

*Beacon Theatres, Inc. v. Westover*

{¶34} During the trial court proceedings and on appeal, Appellants heavily rely upon the holding in *Beacon Theatres, Inc. v. Westover* in support of their proposition that a court must conduct a jury trial on common factual issues before or at the same time as it tries declaratory judgment claims. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). Thus, the proper procedure, according to Appellants, is for the parties to try all legal claims and issues to a jury before the court hears and determines any equitable claims.

{¶35} In *Beacon Theatres*, Beacon claimed that Fox West Coast Theatres, a competitor, and Fox's distributors were violating federal antitrust laws by agreeing to "clearances" during which Fox had the exclusive right to show first-run motion pictures in the area and threatened to sue Fox for treble damages under the Sherman Antitrust Act. *Beacon Theatres*, 359 U.S. at 502. In response, Fox brought an anticipatory action against Beacon for a declaratory judgment that its conduct and those of the distributors were consistent with antitrust laws under the Sherman Antitrust Act and the Clayton Act, and for an anti-suit injunction. *Id*. Beacon counterclaimed for treble damages under the Sherman Antitrust Act and other relief

for the alleged antitrust violation and cross claimed against an exhibitor that had intervened. *Id*. at 503. Beacon demanded a jury trial of the factual issues in the case. *Id*.

{¶36} The district court viewed Fox's complaint as raising "essentially equitable" issues, even though Beacon asserted a legal counterclaim, and bifurcated Fox's declaratory judgment claim for a non-jury trial and deferred resolution of Beacon's counterclaim and cross claim. *Beacon Theatres*, 359 U.S. at 503. However, upon review, the United States Supreme Court held that since the dispositive facts on both Fox's claim and the Beacon's counterclaim were the same—i.e., whether Fox's conduct constituted a violation of the Sherman Antitrust Act—to resolve the Fox's equity suit first without a jury would in effect preclude a subsequent trial by jury on Beacon Theatres' counterclaim, depriving Beacon of its Seventh Amendment right.[2] *Id.* at 509-510.

### *Relevant Ohio Law*

{¶37} At the outset, we note that several courts have observed that the Seventh Amendment applies only in federal courts and does not apply to the states. *See Curtis v. Loether*, 415 U.S. 189, 192, fn. 6 (1974); *Orange Cty. Water Dist. v. Alcoa Glob. Fasteners, Inc.*, 12 Cal. App. 5th 252, 356-57 (2017); *McDowell*

---

[2] The Seventh Amendment to the United States Constitution states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

*Welding & Pipefitting, Inc. v. United States Gypsum Co.*, 345 Or. 272, 285 (2008) (stating "the Seventh Amendment does not apply to the states and that we interpret state constitutional provisions independently of their federal counterparts"); *Arrington v. Daimler Chrysler Co.*, 9th Dist. Summit Nos. 22108, 22270, 22271, 22272, 22273, 22274, 22284, 22285, 22311, 2004-Ohio-7180, ¶ 23, citing *Adamson v. California* (1947), 332 U.S. 46, *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 432 & fn. 14 (1996), citing *Walker v. Sauvinet*, 92 U.S. 90 (1876) (explaining that " 'the due process clause of the Fourteenth Amendment, however, does not draw all the rights of the federal Bill of Rights under its protection.'  One such unincorporated right is the Seventh Amendment right to a civil jury trial; the Fourteenth Amendment does not assure such a right in state court proceedings").

{¶38} Under Article I, Section 5, of the Ohio Constitution and Section 2311.04 of the Ohio Revised Code, a demand for a monetary judgment usually entitles a plaintiff to a jury trial.[3] *Wannemacher v. Cavalier*, 3d Dist. Hardin No. 6-03-12, 2004-Ohio-4020, ¶ 59.  However, the Supreme Court of Ohio has long held

---

[3] Article 1, section 5 of the Ohio Constitution states:

> **The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.**

R.C. 2311.04 states:

> **Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure.  Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived or unless all parties consent to a reference under the Rules of Civil Procedure.**
> **All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.**

that a right to a jury trial does not exist if the relief sought is equitable rather than legal. *Cross v. Ledford*, 161 Ohio St. 469, 475 (1954); *Digital & Analog Design Corp. v. North Supply Co.*, 63 Ohio St.3d 657, 662 (1992), overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994).

{¶39} Moreover, this Court has previously observed under Ohio law, "[w]here a case presents both a legal and an equitable claim for relief and the money demanded is 'incidental and ancillary' to the equitable claim and can only be awarded if the equitable relief is granted first, then the case is predominantly an equitable action, for which no jury trial is required." *Wannemacher v. Cavalier*, *supra*, ¶ 60, citing *Murello Const. Co. v. Citizens Home Savings Co.*, 29 Ohio App.3d 333, 334 (1985); *see also Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131 (1985); s*ee Huntington Natl. Bank v. Heritage Investment Group*, 12 Ohio App.3d 113 (9th Dist. 1983) (finding in the case at hand that the equitable relief was the primary action and the money demand did not convert the action into one for money only with the right to trial by jury).

{¶40} The Supreme Court of Ohio has also held that in a declaratory judgment action, which does not request the recovery of money, the party seeking declaratory judgment has no right to a jury trial pursuant to R.C. 2311.04. *Erie Ins. Group v. Fisher*, 15 Ohio St.3d 380 (1984), at syllabus (stating that "[a] declaratory judgment action filed by an insurer against an insured, the purpose of which is to

construe an insurance policy and determine the insurer's obligations to the insured, and is not for the purpose of determining liability in an action for the recovery of money, is properly triable to the court"), citing *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305 (1951), at paragraph one of the syllabus; *see also Homan, Inc. v. A1 AG Servs., L.L.C.*, 175 Ohio App. 3d 51, 56, 2008-Ohio-277, ¶ 10 (3d Dist.), citing *Am. Continental Ins. Co. v. Estate of Gerkens*, 69 Ohio App.3d 697, 707(1990), *Hildreth Mfg., L.L.C. v. Semco, Inc*., 151 Ohio App.3d 693, 2003-Ohio-741, at ¶ 52-54 (stating there is no right to jury trial on a declaratory judgment action not seeking the recovery of money).

{¶41} In the instant case, the record reveals that the trial court gave due consideration in resolving this issue, devoting a lengthy pre-trial hearing to the matter and entertaining several memoranda submitted by the parties on the subject. The trial court found that the declaratory judgment actions sought only equitable relief and involved the interpretation and enforceability of the parties' Employment Agreement which are questions of law and solely within the province of the trial court to resolve. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus (the construction of written contracts is a matter of law); *see also* R.C. 2311.04 (issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure); *Levengood v. Levengood*, 5th Dist. Tuscarawas No. 1998AP100114, *13 (June 7, 2000).

**{¶42}** The trial court further determined that there was no "commonality" of issues between the declaratory judgment actions pertaining to ownership and the remaining claims, counterclaim, and cross claim. Thus, the trial court ordered the parties' competing declaratory judgment actions to be tried to the court first and reserved the remaining claims, counterclaims, and cross claim to be resolved in a separate trial at a later date.

**{¶43}** Ohio Rule of Civil Procedure 42(B) gives trial courts discretion to order a separate trial on any claim or issue. Specifically, the Civil Rule states,

> **(B) Separate Trials. For convenience, to avoid prejudice, or to expedite or economize, the court may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims. When ordering a separate trial, the court shall preserve any right to a jury trial.**

**{¶44}** "The decision of whether or not to bifurcate the proceedings * * * is a matter within the sound discretion of the trial court. *Sheets v. Norfolk S. Corp.*, 109 Ohio App.3d 278, 288 (1996), *citing Heidbreder v. Trustees*, 64 Ohio App.2d 95 (1979).

**{¶45}** In the instant case, we find no error in the trial court's decision to bifurcate the declaratory actions claims and to hear those claims first in a separate trial to the court in order to promote convenience and efficiency of the proceedings. The trial court recognized the issue of ownership of the inventions, innovations, and improvements as a fundamental question of law to be determined by the court.

Unlike *Beacon Theatres*, which involved a situation where the parties asserted mirror-image claims and the court's resolution of the equitable claims would necessarily involve determination of the same issues involved in the legal claims, in this case, Appellants' legal counterclaims did not share commonality of issues with the declaratory judgment claims. While Appellants appear to suggest that a mere overlap in evidence between the legal and equitable claims justifies consolidating all claims in a jury trial, *Beacon Theatres* provides no support for this argument. The reasoning in *Beacon Theatres* rested on an overlap in legal issues, and not on an asserted overlap in evidence relating to separate issues. Thus, we conclude that *Beacon Theatres* does not preclude the trial court in this instance from deciding an equitable issue—particularly a threshold one—merely because there may be some overlap in the evidence. Nor do we find the Ohio appellate cases cited by Appellants in their brief to be persuasive in this instance as the issues and claims raised in those cases are factually and procedurally distinguishable. *See Sidenstricker v. Miller Pavement Maintenance, Inc.*, 10th Dist. Franklin No. 03AP-827, 2004-Ohio-4653; *Raskow v. Fortner*, 9th Dist. Summit No. 18399 (April 15, 1998).

{¶46} Based on the foregoing, we conclude the trial court acted within its authority when it ordered the bifurcation of these claims where, as in this instance, the issues underlying the equitable declaratory judgment actions are distinct from those underlying the legal claims in this case. Moreover, we find that, in its August

30, 2019 judgment entry, the trial court explicitly preserved any right to a jury trial Appellants may have on the remaining claims, counterclaims, and cross claim comporting with the authority conferred to it under Civ.R. 42(B). Accordingly, we conclude that the trial court did not err in deciding to hold separate trials on the declaratory judgment actions and Appellants' legal counterclaims and cross-claim.

{¶47} The first assignment of error is overruled.

*Second Assignment of Error*

{¶48} In the second assignment of error, Appellants claim that the trial court erred when it found Appellants had "waived" their right to a jury trial on the adjudication of the parties' respective declaratory judgment actions.

{¶49} In its August 30, 2019 "Judgment Entry—Orders Setting Trial to Court on Declaratory Actions Only, and Otherwise Denying Motion to Strike Jury Demand," the trial court stated the following:

> **In the instant case, Plaintiff and Defendants each have brought actions for declaratory judgment asking, in effect, for the court to determine their respective rights to certain intangibles pursuant to the terms of employment of the Defendant Dircksen with the Plaintiff. Defendants agreed at final pre-trial that both parties' respective declaratory judgment actions should be decided by the court (4:41p.m.) and that there was no commonality of issues between the declaratory judgment actions and the legal claims being brought by the Defendants on the counterclaims and cross-claims (4:55p.m.). Thus, such declaratory judgment actions brought herein, consistent with the ruling in *Erie Ins. Group v. Fisher*, 15 Ohio St.3d 380 (1984), will be solely decided by the court.**

(Doc. No. 102 at 4).

{¶50} At the trial on the declaratory judgment actions, prior to the presentation of evidence, Appellants objected to the trial court's characterization of their agreement regarding the nature of the declaratory judgment actions in its judgment entry bifurcating these claims. On appeal, Appellants argue that this statement by the trial court in the August 30, 2019 Judgment Entry amounts to a finding that they had waived their right to a jury with respect to the competing declaratory judgment actions, which they contend is not supported by the record.

{¶51} The transcript from the August 29, 2019 pre-trial hearing reveals that the trial court repeatedly pressed Appellants for a clear indication as to which claims they believed must be tried to a jury in support of their jury demand. Specifically, with respect to the declaratory judgment actions, the following dialogues transpired at the pre-trial hearing between the trial court and Appellants' counsel.

> **Trial court: The Court will turn to the parties and ask again, Counsel for [Appellants], what specific questions do you believe are to be determined by the jury with respect to your claim for a declaratory judgment and also with judgment to the Plaintiff's complaint for a declaratory judgment and injunctive relief?**
>
> **Appellants' Counsel: Your Honor, it is our position that those are decided by the Court.**

(Doc. No. 166 at 77).

> **Appellants' Counsel: The Court is the decision maker on the,—**
>
> **Trial Court: On the DEC action.**

**Appellants' Counsel:** —, on the DEC action.

(Doc. No. 166 at 94).

**Trial Court: So back to my question before we broke, what questions should be decided by the jury on the issues dealing with DEC action that I think you ended up with none; right?**

**Appellants' Counsel: Correct.**

(Doc. No. 166 at 99).

**Trial Court: What is the commonality?**

**Appellants' Counsel: The commonality of issues, Your Honor, is that the way that they have tortuously interfered by falsely telling [a customer-competitor] that Mr. Dircksen was misappropriating their trade secrets causing them to say, oh, we don't want to do,— we're scared, we don't want to do business under these circumstances. So that's,—whether or not it's a trade secret or not is vital to the counterclaims.**

**Trial Court: What's the commonality with the DEC action?**

**Appellants' Counsel: I don't think there is a commonality with the DEC action, because that deals with ownership.**

(Doc. No. 166 at 103).

{¶52} We conclude that the record supports the trial court's observation in its August 30, 2019 Judgment Entry of Appellants' counsel's statements that the court should resolve the declaratory judgment actions and that there is no commonality of issues between the declaratory judgment actions and the Appellants' legal counterclaims and cross claim. Moreover, the record does not

support Appellants' contention that the trial court explicitly found a jury waiver with respect to the declaratory judgment actions. Further, and even assuming, *arguendo*, that the trial court construed these pre-trial statements as a jury waiver given our discussion in the first assignment of error regarding the trial court's authority to bifurcate the claims in this manner, we find no prejudice on the part of Appellants.

{**¶53**} The second assignment of error is overruled.

*Fifth and Seventh Assignments of Error*

{**¶54**} In these assignments of error, Appellants argue that the trial court erred in finding that the Employment Agreement vested sole ownership of the innovations, inventions, and improvements in Precision Strip, and therefore erred in granting Precision Strip a declaratory judgment on this basis. Specifically, the trial court made the following conclusion as to ownership of the disputed innovations, inventions, and improvements:

> **IT IS THEREFORE ORDERED, ADJUDGED AND DECLARED THAT the intellectual property rights over these contested innovations and inventions * * * are the sole property of the Plaintiff, Precision Strip, Inc., and that Defendant, Steven Dircksen, has no property right to said inventions or improvements at issue herein as set forth in Exhibit 10, which is incorporated into this Journal Entry as if fully re-written herein * * *.**

(Doc. No. 126 at 11).

*Standard of Review*

-26-

**{¶55}** In a declaratory judgment case, a trial court's decision on justiciability is reviewed under the abuse of discretion standard of review. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 1. Justiciability is a threshold question dealing with whether the case is appropriate for declaratory relief, including whether there is an actual controversy between the parties. *Id*. at ¶ 5, 10 (not every case is appropriate for a declaratory action), clarifying *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 12 (where a trial court determines a controversy is so contingent that declaratory relief does not lie, the reviewing court will not reverse unless the decision is clearly unreasonable). Thereafter, legal questions are subject to *de novo* review whereby no deference is given to the trial court's decision. *Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208 at ¶ 1, 13.

**{¶56}** As we previously noted, the issue of ownership of the innovations, inventions, and improvements relating to the dry lubrication application process Dircksen developed while employed at Precision Strip underlies the parties' respective declaratory judgment actions. In maintaining its declaratory judgment action, Precision Strip argues that the Employment Agreement Dircksen signed upon being hired and his subsequent written acknowledgments of the company's code of conduct regarding ownership of intellectual property and confidentiality of trade secrets exclusively governs the issue. Specifically, Precision Strip asserts that the plain language of the Employment Agreement automatically vests sole

ownership of the innovations, inventions, and improvements in the company at the time of their conception. In other words, Precision Strip contends that the Employment Agreement operates to automatically transfer to it, at the time of conception or acquisition, any right or interest Dircksen may have had when he conceived or acquired the innovations, inventions, and improvements as an employee for Precision Strip.

{¶57} For their part, Appellants argue that the language of the Employment Agreement requires Precision Strip to seek an assignment from Dircksen before it is vested with ownership of the intellectual property under the Employment Agreement. Thus, Appellants maintain that in order to acquire ownership of any intellectual property under the terms of its Employment Agreement, Precision Strip had an affirmative obligation to request an assignment of ownership of the intellectual property, which it failed to do, and therefore Dircksen, as the inventor/creator, was never divested of ownership of the inventions and innovations. Appellants thus claim that under the Employment Agreement, Precision Strip would retain residual "shop rights" to the innovations, inventions, and improvements, but that it does not exclusively own the intellectual property nor can it prevent Appellants from using the innovations, inventions, and improvements in their business.[4] In the alternative, Appellants contend that the Employment Agreement

---

[4] "A 'shop right' is generally accepted as being a right that is created at common law, when the circumstances demand it, under principles of equity and fairness, entitling an employer to use without charge an invention

Case Nos.  2-19-12 and 2-20-01

is unenforceable in any event because of the parties' unequal bargaining power and

the agreement amounts to a contract of adhesion.

<em>The Employment Agreement</em>

{¶58} Paragraph 4 of the Employment Agreement states:

> **Employee shall promptly disclose to the Company each discovery, invention, technological innovation, copyrightable work, or proprietary interest in any of these conceived or acquired during the term of his employment with the Company, and for a period of six months thereafter, which relate to any of the products manufactured or sold by the Company or which grow out of or relate to any experimental, developmental, manufacturing, commercializing or other work carried out by the Company during the term of employment. Employee's rights and interests therein shall pass to the Company at the time of conception of [sic] acquisition thereof by Employee. Employee shall, upon request, promptly assign to the Company, without further consideration, all Employee's assignable interest therein, and shall sign all papers and do all acts and things which the Company may consider reasonably necessary to secure to it, its successors and assigns, any and all rights pertaining thereto, including letters patent of the United States and foreign countries. This paragraph does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on the Employee's own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the Employee for the Company.**

(Plaintiff's Ex. 1).

---

patented by one or more of its employees without liability for infringement." *McElmurry v. Ark. Power & Light Co.*, 995 F.2d 1576, 1580 (Fed.Cir.1993).

{¶59} On appeal, the parties do not dispute that Dircksen signed the Employment Agreement in 1995 when he was hired to work on the production floor at a base rate of $8.65/hour. Moreover, the parties do not dispute that Dircksen invented, created, and modified adaptations to the dry lubricant machining process during the course of his employment with Precision Strip, using the company's resources, such as parts and materials paid for by Precision Strip, other Precision Strip employee's time and labor, and design software owned by Precision Strip. Nevertheless, as previously mentioned, the parties dispute the meaning of the contract.

{¶60} "When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether or not an ambiguity exists." *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 21, citing *Buckeye Corrugated, Inc. v. DeRycke*, 9th Dist. Summit No. 21459, 2003-Ohio-6321. The governing principle in contract interpretation is to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37.

{¶61} The trial court found the provision stating that "Employee's rights and interests therein shall pass to the Company *at the time of conception* of [sic] *acquisition thereof by Employee*" to be clear and dispositive of the parties' intent that ownership of the intellectual property automatically passes to the company at the time of its conception or acquisition. In addition, the trial court found that the provision relating to an assignment of employee's ownership interest was not a condition precedent in order for ownership of the intellectual property to pass to the company. Specifically, the trial court found the following with respect to the meaning of the Employment Agreement:

> **After examining the language of the contract, when taken as a whole, the court finds that the contract is not vague or ambiguous. Since the contract makes it clear that all such inventions and innovations become property [of the Company] at the time of conception, the following sentences only refer to all "Employee's assignable interest" since the invention belong to the company at the time of conception, the employee does not have any assignable interest in the invention [at] the time of conception.**
>
> **The only reasonable meanings of the remaining sentences are requirements that the paperwork documenting such ownership by the company must be signed promptly when requested, and are not requirements that the company must first make any such demand in order for ownership interests to pass. The subsequent sentences refer to ministerial acts required to document the ownership rights of the employer that were clearly and unambiguously its property at the time of conception and thereafter.**

(Doc. No. 126 at 6).

{¶62} We concur with the trial court's conclusion that the plain language of the first two sentences under paragraph four of the Employment Agreement, specifically the provision that "Employee's rights and interests therein shall pass to the Company at the time of conception of [sic] acquisition thereof by Employee," clearly and unambiguously establishes the parties agreed that ownership of the intellectual property at issue automatically passed to Precision Strip at the time it was conceived by Dircksen. We are not persuaded by Appellants' contention that the assignment language contained in the third sentence limits the automatic ownership transfer language. Nor are we persuaded by Appellant's assertion that the assignment language in the third sentence is inconsistent or mutually exclusive with the automatic transfer language. Rather, we agree with the trial court that the assignment language is a permissive reservation if the need for an assignment as proof of ownership should arise, but it does not otherwise serve to impose an obligation upon Precision Strip to first request and obtain a written assignment from the employee in order for the automatic transfer of ownership provision to apply. We further conclude that the clear and unambiguous language of the Employment Agreement exclusively governs the issue of ownership and there is no further need to consider parole evidence or Appellants' assertions based on the common law regarding the ownership of inventions.

{¶63} In sum, we conclude that the trial court did not err when it determined that the parties' Employment Agreement governed the issue of ownership of the disputed intellectual property and vested sole ownership of the inventions, innovations, and improvements in Precision Strip. We further acknowledge Appellants' somewhat gratuitous assertion that the Employment Agreement is a contract of adhesion and therefore should not be enforced, however, the record simply does not support this assertion, nor do Appellants assert any substantive argument advancing this position. Accordingly, for reasons stated, we conclude that the trial court did not err when it issued a declaratory judgment in favor of Precision Strip on the issue of ownership of the intellectual property in dispute.

{¶64} The fifth and seventh assignments of error are overruled.

*Third and Sixth Assignments of Error*

{¶65} In the third and sixth assignments of error, Appellants argue that the trial court violated their procedural due process rights when it made a finding in its October 10, 2019 Judgment Entry granting declaratory relief in favor of Precision Strip that the disputed inventions, innovations, and improvements are trade secrets. Specifically, Appellants claim the due process violation occurred when the trial court bifurcated the declaratory judgment actions and ordered a bench trial on those claims only, and then subsequently made in its judgment entry a factual finding as to trade secrets which implicated other claims and counterclaims not litigated at the

bench trial. Thus, Appellants contend that the trial court made its trade secret finding without providing Appellants notice or an opportunity to present evidence in support of their position that the inventions, innovations, and improvements are not trade secrets.

{¶66} Appellants further contend that the issue of whether the disputed inventions, innovations, and improvements are trade secrets is an issue of fact necessary for Precision Strip to prove in order to prevail on its claim that Appellants misappropriated trade secrets and that the trial court explicitly reserved adjudication on Precision Strip's misappropriation claim and Appellants' companion counterclaim for bad faith prosecution of a specious trade secret claim to be tried at a separate trial. Appellants also argue that the trial court failed to engage in the appropriate analysis under Ohio statutory or case law authority to issue a finding that the intellectual property at issue are trade secrets. *See* R.C. 1333.61; *State ex rel. The Plain Dealer v. Ohio Dept. of Ins*., 80 Ohio St. 3d 513, 524-25.

{¶67} On appeal, Precision Strip acknowledges that it was error for the trial court to make a trade secrets determination in its judgment entry granting it declaratory relief. However, Precision Strip maintains that the error is harmless and is not a basis for reversal of the trial court's declaratory judgment ruling.

{¶68} "Due process of law implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal * * * to be

heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." *Williams v. Dollison*, 62 Ohio St.2d 297, 299 (1980).

{¶69} As discussed in our resolution of the first assignment of error, the trial court, acting pursuant to the authority conferred to it by Civ.R. 42(B), chose to bifurcate the declaratory judgment actions and to conduct a separate trial on the ownership issue prior to the adjudication of the remaining claims, counterclaims, and cross claim. We found that the trial court did not abuse its discretion in bifurcating the claims in this matter because the declaratory judgment actions are equitable in nature and did not involve a commonality of issues with the remaining claims, counterclaims, and cross claim. More specifically, we concurred with the trial court that the declaratory judgment actions did not require it to resolve the factual issue of whether the disputed inventions, innovations, and improvements are trade secrets, and therefore the claims for declaratory relief could be severed from the other claims.

{¶70} In issuing its August 30, 2019 "Judgment Entry—Orders Setting Trial to Court on Declaratory Actions Only, and Otherwise Denying Motion to Strike Jury Demand," the trial court notified the parties that it intended to limit the scope of the September 24 and 25 bench trial to only the declaratory judgment actions. Consequently, both parties were apprised and prepared to only litigate their

respective declaratory judgment claims. Therefore, we conclude it was error for the trial court to make any finding as to whether the inventions and innovations constituted trade secrets. Moreover, the determination of trade secrets was not in any way germane, necessary, or essential to resolving the declaratory judgment matter and was inconsistent with the trial court's prior order limiting the scope of the bench trial. Accordingly, we find that the trial court's erroneous decision to make a conclusive determination regarding the trade secret status of the disputed inventions, innovations, and improvements in its October 10, 2019 Judgment Entry is easily severable from and had no bearing upon the validity of the trial court's judgment granting declaratory relief in favor of Precision Strip.

{¶71} As such, we do not find that this error in any way prejudices either party when reviewing the trial court's declaratory judgment ruling. Accordingly, we reiterate our determination that the declaratory judgment remains in full force and effect given our determination of the fifth and seventh assignments of error affirming the trial court's judgment finding that Precision Strip is entitled to declaratory relief based upon the language of paragraph four of the Employment Agreement.

{¶72} Thus to this limited extent as outlined above, we sustain the third and sixth assignments of error only as to the trial court's finding on trade secrets in its October 10, 2019 Judgment Entry.

*Tenth Assignment of Error*

**{¶73}** In their tenth assignment of error, Appellants contend that the trial court erred in ordering the entire record of the trial proceedings be placed under seal and ordering Appellants and their counsel not to disclose the alleged trade secrets without prior approval pursuant to R.C. 1333.65.

**{¶74}** Revised Code Section 1333.65 states:

> **In an action under sections 1333.61 to 1333.69 of the Revised Code, a court shall preserve the secrecy of an alleged trade secret by reasonable means that may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval**.

**{¶75}** Under R.C. 1333.65, the trial court has the discretion to issue a protective order in response to an allegation involving alleged trade secrets. *See State ex rel. ABM Janitorial Midwest, Inc. v. Franklin Cty. Court of Common Pleas*, 10th Dist. Franklin No. 09AP-27, 2010-Ohio-623.

**{¶76}** Prior to hearing evidence pertaining to the declaratory judgment actions on September 24, 2019, the trial court heard arguments relating to Precision Strip's Motion for Leave to File Confidential Documents under Seal and for an Order Governing the use of Confidential Information at Hearing. Counsel for Precision Strip explained that they had planned to introduce, through the testimony of several witnesses, documents, drawings, plans, and videos detailing the precise

nature of the inventions, innovations, and improvements at issue. Precision Strip noted that R.C. 1333.65 granted the trial court the authority to provide certain protections for *alleged trade secrets* during the proceedings. Precision Strip clarified that it was not seeking the trial court to make a determination that the inventions, innovations, and improvements are in fact trade secrets, but rather only a determination that they qualified for protection under the statute as alleged trade secrets.

{¶77} Appellants opposed the motion, arguing that granting protective orders pursuant to R.C. 1333.65 is inconsistent with the trial court's prior ruling bifurcating the declaratory judgment actions from the remaining claims, counterclaims, and cross claim, and further claiming that such a determination would impinge upon their right to a jury trial on the unresolved matters.

{¶78} On the record at trial, the trial court found that Precision Strip had established the information qualified as alleged trade secrets under R.C. 1333.65. In its October 10, 2019 Judgment Entry the trial court ordered the following with respect to protective measures:

> **Plaintiff had requested that the court close the courtroom, and that the transcript and all exhibits be placed under seal pursuant to R.C. 1333.65. The Court denied the motion to seal the courtroom (amounting to conversion of the trial to an in-camera hearing), but granted protection of the trade secrets by sealing of the records of the action by permitting the drawings and specific information in the pleadings to be filed under seal, and permitting some testimony to be admitted under seal. Upon further**

> **consideration, the Court now orders that the entire record of the trial upon the competing declaratory judgment actions held September 24 and 25, including all exhibits thereto, to be placed under seal, and that the Defendant and his counsel are ordered not to disclose the trade secrets (including the drawings, testimony, exhibits or otherwise) to any person without prior court approval, pursuant to R.C. 1333.65.**

(Doc. No. 126 at 11).

**{¶79}** While we have acknowledged that as a consequence of our limited ruling on the third and sixth assignments of error, the issue of whether the disputed innovations, inventions, and improvements constitute trade secrets has yet to be adjudicated, we nevertheless find no abuse of discretion on the part of the trial court insofar as it found that information at issue qualified for protection under R.C. 1333.65 as *alleged trade secrets* at this juncture in the proceedings. The statute clearly confers to the trial court the authority to provide certain protections for alleged trade secrets, including sealing records and preventing unauthorized disclosure.

**{¶80}** Accordingly, on this basis the tenth assignment of error is overruled.

*Eighth Assignment of Error*

**{¶81}** In this assignment of error, Appellants challenge the trial court's judgment entry granting Precision Strip preliminary and permanent injunctive relief.

*Standard of Review*

**{¶82}** A party requesting a preliminary injunction must ordinarily show that: " '(1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction.' " *Vineyard Fellowship v. Anderson*, 10th Dist. Nos. 15AP-151, 15AP-230, 2015-Ohio-5083, ¶ 11, quoting *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267 (2000). The test for the granting or denying a permanent injunction is substantially the same as that for a preliminary injunction, except instead of proving a substantial likelihood of prevailing on the merits, the plaintiff must prove that he has prevailed on the merits. *Great Plains Exploration, LLC v. Willoughby*, 11th Dist. No. 2006-L-022, 2006-Ohio-7009, ¶ 12.

**{¶83}** "A permanent injunction is an equitable remedy that will be granted only where the act sought to be enjoined will cause immediate and irreparable injury to the complaining party and there is no adequate remedy at law." *Franklin Cty. Dist. Bd. of Health v. Paxson*, 152 Ohio App.3d 193, 2003-Ohio-1331, ¶ 25 (10th Dist.). It is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot." *Garono v. State*, 37 Ohio St.3d 171, 173 (1988); *W. Branch Local School Dist. Bd. of Edn. v. W. Branch Edn. Assn.*,

2015-Ohio-2753, ¶ 11 (7th Dist.). To be entitled to a permanent injunction, "[a] party seeking a permanent injunction 'must demonstrate by clear and convincing evidence that they are entitled to relief under applicable statutory law, that an injunction is necessary to prevent irreparable harm, and that no adequate remedy at law exists.' " *Ohio Democratic Party v. LaRose*, 10th Dist. Nos. 20AP-432, 20AP-439, 2020-Ohio-6768, ¶ 36, quoting *Acacia on the Green Condominium Assn., Inc. v. Gottlieb*, 8th Dist. No. 92145, 2009-Ohio-4878, ¶ 18. The Supreme Court of Ohio has defined clear and convincing evidence as that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶84} The decision to grant or deny an injunction is solely within the trial court's discretion and, therefore, a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion. *Perkins v. Quaker City*, 165 Ohio St. 120, 125 (1956). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶85} On October 16, 2019, shortly after the trial court issued its judgment entry declaring the disputed inventions, innovations, and improvements to be exclusively owned by Precision Strip, Precision Strip renewed its applications for a

preliminary and a permanent injunction based upon the trial court's declaratory judgment. Specifically, Precision Strip requested that the trial court enjoin Appellants from disclosing, sharing, or using the inventions, innovations, and improvements at issue.

{¶86} As we previously determined in our resolution of the third and sixth assignments of error, the trial court erred when it decided to make the specific factual finding that the disputed inventions, innovations, and improvements are indeed trade secrets based upon the evidence presented at the bench trial on declaratory relief, after it had limited the parties to litigating *only* the issue of ownership underlying the competing declaratory judgment actions at the trial, and had specifically preserved the factual determination regarding the trade secret designation to be adjudicated at a separate trial.

{¶87} In reviewing the trial court's judgment entry granting Precision Strip permanent injunctive relief, we note that the trial court repeatedly relies upon its premature trade secrets finding in the prior declaratory judgment action, while at the same time as noted above, denying Appellants the opportunity to present evidence as to whether these matters constitute trade secrets. Thus, we cannot find that the record supports the trial court's determination in the injunction action that Precision Strip *has prevailed on the merits* regarding its claim that the disputed inventions, innovations, and improvements are trade secrets. Consequently, we have no choice

but to conclude that the trial court abused its discretion in this instance and to reverse the grant of *permanent* injunctive relief on this basis.

**{¶88}** This notwithstanding, the trial court found grounds to grant Precision Strip *both* preliminary *and* permanent injunctive relief. Our review of the record reveals there was sufficient evidence presented at the injunction hearing for the trial court to issue *preliminary* injunctive relief in favor of Precision Strip based upon its declaration that Precision Strip owns the inventions, innovations, and improvements, and upon the evidence supporting its finding that the intellectual property constitutes *alleged* trade secrets.

**{¶89}** Specifically, the record supports the trial court's conclusion that Precision Strip clearly and convincingly demonstrated a substantial likelihood that it will be successful on the merits because it prevailed on its declaratory judgment action, and it presented sufficient evidence to demonstrate that this case involves *alleged* trade secrets. The evidence established that the inventions, innovations, and improvements were of great value to Precision Strip and that this value was largely derived from the fact that the specific mechanics of the intellectual property were unknown to its competitors. As noted by the trial court in its judgment entry granting injunctive relief, the evidence further demonstrated Appellants continued to engage in conduct disclosing some of the innovations, invention, and

improvements to a competitor *after* Precision Strip initially asserted its claim of sole ownership based upon the Employment Agreement and *after* this lawsuit was filed.

> **The court notes that the evidence supports that [Dircksen] was put on notice that [Precision Strip] was exercising its claim on its intellectual property, i.e.—[Dircksen's] inventions and innovations, and was proceeding to reveal as part of his proposal that he gave to [a competitor] the components of his design and attempted to market his design, and further demonstrated by the email from [another company's representative] confirming that [Appellants] intended to proceed to construct and market the technology to [a competitor].**
>
> **As recently as two weeks ago and after this court's ruling of October 10, 2019, [Appellant] Dircksen and his company were negotiating with [a steel mill], a customer and a competitor of [Precision Strip], to work with assisting [the steel mill] to do whatever it takes to get a * * * metal lubricating machine modified to overcome the same exact problems he had developed the processes and designs in Exhibit 10 while at [Precision Strip].[5]**

(Doc. No. 151 at 6).

{¶90} We conclude that the record supports the trial court's finding that Appellants' have engaged in conduct that if not enjoined threatens to cause Precision Strip irreparable harm, regardless of whether or not the inventions, innovations, and improvements are deemed to be trade secrets at this preliminary stage. Therefore we find the record also supports the trial court's conclusion that balance of harms favors granting Precision Strip preliminary injunctive relief.

---

[5] Exhibit 10 is a comprehensive summary of all the items Precision Strip claimed to be "alleged trade secrets." (Sept. 24 and 25, 2019 Tr. Trans. at 235). This exhibit was admitted as evidence at the bench trial on the parties' competing claims for declaratory relief.

{¶91} Accordingly, we sustain the eighth assignment of error only to the limited extent that the trial court erroneously found sufficient grounds to grant *permanent* injunctive relief. Nevertheless, for the reasons discussed, we overrule the eighth assignment of error as to the trial court's decision to grant Precision Strip's application for a *preliminary* injunction.

*Ninth Assignment of Error*

{¶92} In the ninth assignment of error, Appellants contend that the trial court erred in striking evidence Appellants sought to elicit at the consolidated injunction hearing.

{¶93} At the consolidated injunction hearing, the trial court heard testimony from several witnesses on the behalf of both parties in support of their respective positions regarding whether Precision Strip is entitled to injunctive relief. During the hearing, Appellants attempted to present evidence establishing that the inventions, innovations, and improvements do not merit elevation to trade secret status and protection, contrary to the trial court's finding in its October 10, 2019 Judgment Entry. The trial court struck the testimony as an improper attempt to supplement the record with additional facts, and as irrelevant to the litigation of the injunction factors. Specifically, with regard to this testimony the trial court stated the following in its judgment entry granting injunctive relief:

> **As the testimony about individual elements of "trade secret" definition are not germane to the four legal issues presented**

**before this court at this time on whether plaintiff is entitled to injunctive relief, such testimony, including, specifically, the steps take[n] or not taken by Plaintiff to protect the secrecy of the trade secrets (processes, inventions, innovations, etc.) in question are STRICKEN and shall not be considered by this court.**

(Doc. No. 151 at 6).

{¶94} However, given our resolution of the eighth assignment of error sustaining Appellants' assignment of error regarding the trial court's grant of permanent injunctive relief, and our resolution of the third and sixth assignments of error sustaining Appellants' claim that the trial court erred in making a premature finding on trade secrets, all of which will necessitate a separate trial on the issue of trade secrets, we find the ninth assignment of error to be moot and decline to address it further.

*Fourth Assignment of Error*

{¶95} In their fourth assignment of error, Appellants contend that the trial court erred in denying their motion for bifurcation of the hearings on Precision Strip's applications for a preliminary and permanent injunction. Specifically, Appellants argue that the trial court erred in consolidating the hearings on the applications.

{¶96} On appeal, Appellants argue that the trial court's decision to consolidate the hearings on Precision Strip's applications for a preliminary and a permanent injunction impinged upon their right to have a jury determine their

claims. Insofar as Appellants' maintain their position that they are entitled to a jury on all equitable and legal claims, we refer to our resolution of the first assignment of error and we find no error on this basis.

{¶97} Moreover, Civ.R. 65(B)(2) governs the consolidation of a preliminary injunction hearing with a trial on the merits, providing in pertinent part:

> **Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (B)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.**

{¶98} We acknowledge that under Civ.R. 65(B)(2) a court has discretionary power to advance a trial on its merits, with knowledge of the parties that the case is being heard on the merits, and to consolidate the trial with a hearing on a preliminary injunction to prevent two hearings, and to save time and expense for the court and parties by essentially expediting the trial for the permanent relief. Civ.R. 65(B)(2); staff notes, Civ.R. 65. The manifest purpose and proper application of the rule is to conserve the time and resources of the court and of litigants where, in an action whose only ultimate objective is a permanent injunction, the same evidence will be applicable in both the preliminary and merit stages of the cause. *Cairelli v. Brunner*,

10th Dist. Franklin No. 2016-Ohio-5535, ¶ 26, citing MCCORMAC, OHIO CIVIL RULES PRACTICE (1970) 350, Section 14.10.

{¶99} However, due to our resolution of the eighth assignment of error, in which we have affirmed the trial court's grant of a preliminary injunction, but reversed and vacated the grant of a permanent injunction, the trial court will have to conduct another hearing on Precision Strip's application for a permanent injunction *after* there is an adjudication by a finder of fact at a hearing or trial where both sides are given the opportunity to present evidence in support of their respective positions regarding the issue of whether the disputed inventions, innovations, and improvements rise to the level of trade secrets. Accordingly, the fourth assignment is rendered moot and we decline to resolve the assignment of error. Nor do we address or make any ruling on the extent to which any of the remaining issues before the trial court must be tried to a jury or to the court.

*Conclusion*

{¶100} Based on the foregoing, the trial court's October 10, 2019 Judgment Entry, corresponding to appellate number 2-19-12, granting declaratory relief to Precision Strip on the issue of ownership is affirmed as to the trial court's declaration that Precision Strip is the sole owner of the discovery, invention, technological innovation, copyrightable work, or proprietary interest by virtue of

paragraph four the Employment Agreement, and is reversed and vacated only insofar as the trial court made a premature trade secrets determination.

{¶101} The trial court's December 5, 2019 Judgment Entry, corresponding to appellate number 2-20-01, granting injunctive relief to Precision Strip is affirmed as to the trial court's decision to grant Precision Strip's application for a preliminary injunction. However, for the reasons stated in our resolution of the eighth assignment of error, the trial court's December 5, 2019 Judgment Entry is reversed and vacated as to the trial court's decision to grant Precision Strip's application for a permanent injunction. Accordingly, the entire cause is remanded for proceedings consistent with this opinion.

*Judgments Affirmed in Part,*
*Reversed in Part and*
*Causes Remanded*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**